**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

|  |  |  |
|---|---|---|
| KYOCERA AVX COMPONENTS CORPORATION, | ) ) ) | Civil Action No. 6:22-cv-02440-TMC |
|  | ) |  |
| *Plaintiff*, | ) ) |  |
| v. | ) ) |  |
| UNITED STATES OF AMERICA, | ) ) ) |  |
| *Defendant*. | ) ) |  |

## UNITED STATES' MOTION TO DISMISS
## THE AMENDED COMPLAINT

Congress has long established how a taxpayer must bring a suit to contest tax liabilities in the district court: a taxpayer must pay the tax first, then seek a refund. 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1). In *Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960), the Supreme Court held that, in order to confer refund suit jurisdiction on a district court, the taxpayer must pay the assessed tax *in full*. 362 U.S. at 167-68; *see also Dwight Moore v. United States*, 394 F. Supp. 2d 782, 784 (D.S.C. 2005) ("[t]he Supreme Court, in a comprehensive opinion, has clearly decided this issue"). In this case, Plaintiff Kyocera AVX Components Corporation (Kyocera) seeks a refund: Kyocera says it has paid more tax than it owes. But it has not paid the full amount the IRS assessed based on Kyocera's original tax return. Because Kyocera has not satisfied the jurisdictional requirement of full payment, the Court should dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(1).

## STATEMENT OF RELEVANT FACTS

Kyocera is a Delaware corporation with a principal place of business in South Carolina. (ECF No. 41 ¶ 8.) Kyocera conducts foreign operations through foreign subsidiaries. (*Id*. ¶ 16; *see also* ECF No. 41-3 at 8-9 (narrative portion of Plaintiff's claim for refund).) Thus, it is a shareholder in foreign entities that are treated as "controlled foreign corporations" for purposes of the Internal Revenue Code. (ECF No. 41-3 at 9.) For tax purposes, Kyocera operates on a fiscal year that ends on March 31, and the tax year at issue here encompasses the period from April 1, 2017, through March 31, 2018. (ECF No. 41 ¶ 1.)

### 1.  The Tax Cuts and Jobs Act and Treasury Guidance Related to the Act

In 2017, Congress passed the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (Dec. 22, 2017). TCJA was a significant overhaul of the international provisions of the Internal Revenue Code. Before TCJA became effective, U.S. taxpayers generally did not pay tax on foreign earnings of controlled foreign corporations until those earnings were repatriated. *See Charles Moore v. United States*, 602 U.S. __, 144 S. Ct. 1680, 1685-86 (Jun. 20, 2024). For many years preceding TCJA, controlled foreign corporations had accumulated trillions of dollars in earnings offshore that had not yet been subject to U.S. taxation. *Id.* at 1686. A "primary goal" of TCJA was to encourage Americans with controlled foreign corporations "to invest earnings from their foreign investments back to the United States instead of abroad." *Id.* at 1685. TCJA transitioned the United States toward a more territorial taxing system, where some of a foreign corporation's active and passive income was subject to U.S. tax, but a portion of it was

exempt from tax. *Id*. at 1686. This new tax regime, referred to in the legislative history as the United States' version of a "participation exemption" system, allows taxpayers to potentially repatriate, tax-free (at least at the shareholder level), some foreign income. Under this rule, certain dividends distributed to a U.S. parent corporation from its foreign subsidiary are eligible for a 100 percent dividends-received deduction through new Internal Revenue Code section 245A (I.R.C., 26 U.S.C.).

To account for the trillions of dollars in earnings that had not yet been repatriated and taxed prior to TCJA, and that could potentially be repatriated tax-free under the section 245A dividends-received deduction, TCJA created a new, "one-time pass-through tax," under section 965, sometimes referred to as the transition tax, or mandatory repatriation tax. *Charles Moore*, 144 S. Ct. at 1686. The transition tax was imposed by including accumulated post-1986 deferred foreign income of certain foreign corporations, including controlled foreign corporations, in the gross income of the United States shareholder. I.R.C. § 965(a); I.R.C. § 951(a); *see also* ECF 41-3 at 9.[1] The transition tax was imposed in this way for the taxable year of the United States shareholder in which the foreign subsidiary's last income tax year began before January 1, 2018, and it must be included in the United States shareholder's gross income for the taxable year that includes that tax period. I.R.C. § 951(a); I.R.C. § 11 (corporate income tax).

---

[1] Section 965(a) includes in income the post-1986 deferred foreign income of each specified foreign corporation (as defined in I.R.C. § 965(e)). For the purposes of this motion, the mechanics of the computation of the transition tax are not critical. But the inclusion is made in what is commonly referred to as the "subpart F income" of the United States shareholder under I.R.C. § 951(a).

To provide relief with respect to collection of the portion of income tax owed as a result of section 965, Congress allowed taxpayers to elect to pay the tax over the course of eight annual installments. I.R.C. § 965(h).[2] If a taxpayer fails to make an installment payment, the IRS is permitted to assess an addition to tax for failure to timely pay that installment, and the unpaid portion of all remaining installments becomes immediately due. I.R.C. § 965(h)(3); Treas. Reg. § 1.965-7(b)(3).

TCJA, being a significant legislative event, required the Treasury and IRS to issue hundreds of items of guidance. *See generally* www.irs.gov/newsroom/tax-reform-guidance (containing links to TCJA guidance including Treasury Decisions, Treasury Regulations, IRS revenue rulings, IRS revenue procedures, and IRS notices). As most relevant here, one item of guidance addressed the impact of TCJA on the deemed-paid foreign tax credit "gross up" provisions of section 78. Under section 78, if a U.S. corporation claims a credit for foreign tax paid by a foreign subsidiary, it must include (or "gross up") its income by a like amount. This mathematical adjustment is sometimes referred to as a section 78 dividend, even though no money or property is actually distributed by the foreign subsidiary. On December 7, 2018, before Kyocera filed its tax return for its period ending March 31, 2018, Treasury published proposed regulations that included a rule to prevent "disparate treatment and double benefit to taxpayers with fiscal

---

[2] Taxpayers that elect to pay the transition tax in installments are permitted to make smaller payments during the first five years (8 percent of the net tax liability) and then increasingly larger payments for each of the following 3 years (15 percent, 20 percent, and 25 percent, respectively). *See* I.R.C. § 965(h)(1). Specifically, this payment deferral was made available to the "net tax liability under [I.R.C. § 965]," as defined in I.R.C. § 965(h)(6) and Treas. Reg. § 1.965-7(g)(10), which is the amount by which the United States shareholder's total income tax liability for the year exceeds what the income tax liability would have been without taking into account I.R.C. § 965 or income, deductions, or credits attributable to dividends received, or I.R.C. § 965 amounts included, with respect to certain specified foreign corporations ("I.R.C. § 965(h) net tax liability").

year CFCs." *Guidance Related to the Foreign Tax Credit, Including Guidance Implementing Changes Made by the Tax Cuts and Jobs Act*, 83 Fed. Reg. 63200, 63219. It did so by providing that section 78 dividends received after December 31, 2017, even if they relate to taxable years of foreign corporations beginning before January 1, 2018, are not treated as "dividends" for calculating the dividend-received deduction in section 245A. *Id.* On the merits of this lawsuit, Kyocera challenges, *inter alia*, the validity of the final Treasury Regulation, Treas. Reg. (26 C.F.R.) § 1.78-1(c), which was made final after Kyocera filed its original tax return. *See Guidance Related to Section 951A (Global Intangible Low-Taxed Income) and Certain Guidance Related to Foreign Tax Credits*, T.D. 9866, 84 Fed. Reg. 29288 (Jun. 19, 2019).

## 2. Kyocera's Original Tax Return

In January 2019, about one month after Treasury issued the proposed rules described above, Kyocera filed its original federal income tax return for its fiscal tax period ending March 31, 2018.[3] In general, it appears that Kyocera followed that guidance, *i.e.*, that it included in income a section 78 gross-up in the amount of $143,483,636, and did not claim a dividends-received deduction under section 245A for the section 78 dividend. (ECF No. 41-3 at 5, 9.) That is, as part of the transition tax, Kyocera was required to include in its gross income its "specified foreign corporation's" post-1986 "deferred foreign income." Kyocera, with annual gross receipts of more than three quarters of a billion dollars (ECF No. 41-3 at 14, line 1a), reported a total tax owed

---

[3] Corporate tax returns are due the 15th day in the fourth month after the close of the tax year, so Kyocera's return was due July 15, 2018. Kyocera obtained a 6-month extension for filing that return, and it timely filed its return in January 2019. (ECF No. 41 ¶ 18).

of $101,087,342. (ECF No. 41-3 at 2, line 4). Of that total, $70,311,016 comprised the

transition tax on Kyocera's post-1986 deferred foreign income of foreign subsidiaries.

(ECF No. 41-3 at 5). Kyocera elected to pay the transition tax through installment

payments as permitted under section 965(h). The first installment is due on the original

due date of the return (July 15, 2018) and successive installments must be paid each year

thereafter. (Declaration of Allison Steele ¶ 15; Exs. A, B.)

### 3. Kyocera's Amended Tax Return and Subsequent Refund Claims

Since Kyocera did not fully pay its tax liability at the time it filed its original tax

return, it made installment payments toward its transition tax liability in July 2018, July

2019, July 2020, and July 2021. In July 2021, still having not fully paid the total tax

reported on its original income tax return, Kyocera filed an amended return for its tax

year ending March 31, 2018. (ECF No. 41 ¶ 19). Kyocera claimed on its amended return

that the Treasury Regulation was invalid and that fiscal-year taxpayers such as itself were

permitted to claim a dividends-received deduction for the section 78 gross-up. *See, e.g.*,

ECF No. 1 ¶¶ 24-43 (original complaint); ECF No. 24 at 1-3 (Plaintiff's response to first

motion to dismiss); ECF No. 41-3 (amended return). Thus, on its amended return,

Kyocera included a section 78 gross-up in the amount of $143,483,636 but then

immediately offset that amount by a dividends-received deduction of $143,483,636 under

section 245A (ECF No. 41-3 at 9); it also asserted that it was entitled to an increased

research and development tax credit of $1,320,162. (*Id*. at 4.) On its amended return,

Kyocera contended that its tax liability for the fiscal tax year ending March 31, 2018,

should be reduced from $101,087,342 (the amount that it had originally reported to the

6

IRS and that the IRS had assessed) to a significantly lower amount, $55,923,814. (ECF No. 41-3 at 5). Kyocera thus contended that even though it had not fully paid the original tax amount assessed by the IRS, it had paid more than the tax liability shown on its amended return and claimed a refund of $8,933,422. (*Id.* at 2, line 12).

After filing its amended return, in acknowledgement that it had still not fully paid the tax assessment, Kyocera subsequently made two installment payments of $5,372,355 (each) toward that unpaid transition tax. With respect to those two payments, Kyocera filed two substantially identical refund claims on March 22 and July 15, 2022. (ECF No. 41 ¶¶ 26-29) (IRS Forms 843). Those refund claims, like the claim for refund made on the Form 1120X amended return, were based on Kyocera's contention that it was entitled to a dividends-received deduction for the section 78 gross-up and that Treas. Reg. § 1.78-1 was invalid. (*See* ECF Nos. 41-3 and 41-4). The IRS did not take any action on any of the refund claims, *i.e.*, the refund claim of $8,933,422 made on its amended return, or either subsequent $5,372,355 refund claim made with each Form 843.

### 4. The Original Complaint, the United States' Motion to Dismiss, and the IRS's Erroneous Abatement and Subsequent Reversal of that Abatement

Kyocera filed this suit on July 28, 2022, seeking judgment for the $8,933,422 overpayment it reported on its amended return. (ECF No. 1, Prayer for Relief). Kyocera's original suit did not include claims for the two other payments that it had made after the filing of the amended return. Kyocera's tax refund suit named the United States as defendant. The defense of such suits in the federal district courts is handled by the Department of Justice, Tax Division. *See* 28 U.S.C. § 516; 28 C.F.R. § 0.70. The IRS

formally referred this case to the Tax Division in October 2022 for it to defend the United States' interest in this case. (Steele Decl. ¶ 6.) Consistent with the role of the Department of Justice outlined at 28 U.S.C. § 501 et seq., the Internal Revenue Code provides that the IRS does not have authority to compromise criminal or civil tax matters once they are referred to the Tax Division. *See* I.R.C. § 7122(a).[4]

Because Kyocera acknowledged in its complaint and claim for refund that it had not fully paid the tax that had been shown as due on its original return and that had been assessed by the IRS, on December 6, 2022, the United States did not file an answer but instead filed a motion to dismiss. (ECF No. 16). The United States contended that this Court lacked jurisdiction because, under the Supreme Court's *Flora* full-payment rule, a taxpayer must fully pay its tax liability before filing a refund suit. (*Id.*). Kyocera opposed the United States' motion. Kyocera acknowledged that it had not fully paid the tax shown as due on its original return and that the IRS had made a tax assessment for that amount. But it contended that *Flora* was not applicable to suits related to TCJA's transition tax under the circumstances of this case. (*See* ECF No. 24 at 10-32). Kyocera relied heavily on the fact that Congress had permitted taxpayers to pay the transition tax in installments, and, at that time anyway, Kyocera was current on all scheduled installment payments for that assessed tax liability. (*See, e.g.*, *id.* at 9.)

The United States' reply brief in support of its motion to dismiss was due, on extension, March 28, 2023. (*See* ECF 25.) But shortly after Kyocera filed its opposition

---

[4] Section 7122(a) provides: "The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."

to the motion to dismiss, the IRS took certain unauthorized and erroneous administrative actions. On March 27, 2023, on the eve of the due date of the United States' reply brief, counsel for Kyocera advised the Department of Justice that Kyocera had received a refund from the IRS of $13,355,783 (an amount that exceeded the $8,933,422 sought by Kyocera in its complaint, *see* ECF 1 ¶ 1). Kyocera's attorneys provided documents that showed that, on March 13, 2023, the IRS gave notice to Kyocera that it was reducing the amount of tax it owed by $43,853,924. (ECF No. 41 ¶ 30; ECF No. 41-1). That is, the IRS "abated" $43,853,924 of the $101,087,342 tax that had been assessed in April 2019. That, in turn, meant that Kyocera's account with the IRS for that tax year had a credit balance, and the IRS issued a refund check to Kyocera in the amount of the credit ($13,355,783) and Kyocera received that refund on March 17, 2023. (ECF No. 41 ¶ 31; ECF No. 41-2.) Counsel for the United States was not aware of – and the Department of Justice did not authorize – either the abatement of the taxes or the issuance of a refund.

The IRS's abatement of tax and the resulting refund were erroneous and unauthorized. The IRS should not have processed Kyocera's amended return and should not have made any adjustments to Kyocera's tax account that was the subject of litigation in the district court. When the IRS received notice that Kyocera had filed this refund suit in 2022, it should have placed a litigation freeze code in Kyocera's computerized tax account for the period ending March 31, 2018. *See* I.R.M. 25.3.8.3.1 (Internal Revenue Manual). But, in error, it did not. (Steele Decl. ¶ 8.) IRS procedures require a freeze code to be entered to prevent unauthorized administrative actions once a taxpayer files a district court action and the IRS refers the case to the Department of Justice Tax Division.

9

In light of these events, the Court granted a further extension to the United States to examine its position and to submit a reply brief in support of its motion to dismiss. (ECF 29.) The IRS Office of Chief Counsel, at the request of the Tax Division, began to review what had happened within the IRS to cause the abatement and the issuance of a refund check. In addition, because Kyocera had received a refund check in an amount that exceeded the judgment it sought in this refund suit, the United States inquired with Kyocera's attorneys whether Kyocera intended to dismiss the suit. (*See* ECF No. 31). Given the IRS Office of Chief Counsel's ongoing review of the events surrounding the $43,853,924 abatement and the issuance of a refund check for $13,355,783, and Kyocera's consideration of what further actions it intended to take, the United States withdrew its motion to dismiss. ECF No. 31. The United States also filed an answer in which, among other things, it contended that the Kyocera was not entitled to take a dividends-received deduction for the section 78 gross-up, that the Treasury Regulation had been properly issued, and that it did "not concede that Kyocera was entitled to the refund" it had received in March 2023. (ECF No. 32 at 14.)

Thereafter, on June 15, 2023, Kyocera filed an amended complaint seeking a refund of $7,042,571 (in addition to the $13,355,783 it had erroneously received). (ECF No. 41). Kyocera, in Count I of the amended complaint, contended that it should receive a $1,310,162 refund due to research and development expenses that were also at issue in its original complaint but had not been erroneously refunded, and in Count II, raising a matter not addressed in its original complaint, Kyocera contended that it should receive

an additional $5,732,355[5] refund related to an installment payment of its § 965 transition tax for which it had subsequently filed a refund claim that the IRS had not refunded. (ECF No. 41 at 9-10).

On September 25, 2023, because both the refund and abatement had been made in error and without the authorization of the Department of Justice, the IRS reversed the erroneous abatement. (Steele Decl. ¶ 13.) Although the situation does not arise frequently, when the IRS makes an abatement after it refers a case to the Department of Justice, the IRS may reverse that abatement if the abatement was made without authorization by the Department of Justice.[6] Taking into account (a) the reversal of that abatement; (b) the application of one of Plaintiff's tax payments from a later tax period to the March 31, 2018, tax period; (c) the failure of Kyocera to make any further installment payments after 2022; and (d) the offset of a refund due to be paid to Kyocera for an overpayment related to its 2007 and 2008 tax years, Kyocera has an assessed tax balance of approximately $36,538,673 that remains unpaid. (Steele Decl. ¶¶ 13-15).

## LEGAL STANDARD

A taxpayer bringing a suit against the United States for a refund of federal income taxes bears the burden of proving subject matter jurisdiction. *Evans v. B.F. Perkins Co.*,

---

[5] As described in the Steele Declaration, one of the $5,732,355 payments made by Kyocera had not been applied to its March 31, 2018, tax period. (*See* ECF No. 41 ¶ 36, line 3 and ECF No. 41-5). On June 22, 2023, the IRS administratively transferred that payment to the relevant tax period. Steele Decl. ¶ 14.

[6] See I.R.M. 25.6.1.10.2.1.1, which provides for the reversal of erroneous abatements: "Erroneous abatements can be reversed in limited circumstances. In these cases, new assessments are unnecessary. Reversal is appropriate only in the following circumstances:
- Clerical errors
- Unauthorized abatements made after referral to the Department of Justice
- Abatements due to bankruptcy discharges"

166 F.3d 642, 647 (4th Cir. 1999). In addition, "[t]he United States, as sovereign, is immune from suit unless it waives that immunity." *Webb v. United States*, 66 F.3d 691, 693 (4th Cir. 1995). Although Congress has waived sovereign immunity for refund suits filed under 28 U.S.C. § 1346 and I.R.C. § 7422, "limited waivers of the federal Government's sovereign immunity must be 'strictly construed . . . in favor of the sovereign.'" *Doe v. Chao*, 306 F.3d 170, 179 (4th Cir. 2002) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). If the United States consents to suit, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotations omitted). A motion under Rule 12(b)(1) challenges "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012).

## ARGUMENT

### A.     The *Flora* full-payment rule requires a taxpayer to fully pay a contested tax liability prior to filing a tax refund suit

Section 1346(a)(1) of Title 28 provides district courts with jurisdiction to hear federal income tax refund suits. District courts have original jurisdiction to hear any "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously . . . assessed or collected . . . under the internal-revenue laws." *Id*. District courts are a post-payment forum, meaning that one prerequisite for bringing suit under 28 U.S.C. § 1346 is that a taxpayer must first fully pay the taxes assessed against it. *Flora*, 362 U.S. at 159 ("[T]hroughout the congressional debates are to be found frequent

expressions of the principle that payment of the full tax was a precondition to suit: 'pay his tax . . . then . . . file a claim for refund'"); *see also Dwight Moore v. United States*, 394 F. Supp. 2d 782, 784 (D.S.C. 2005) (finding that *Flora* "clearly decided" the question whether a taxpayer must fully pay its liability before bringing suit). To satisfy the jurisdictional requirement of paying the full amount assessed, a taxpayer must pay the full amount assessed by the IRS, not an amount the taxpayer later claims to be correct. *Rocovich v. United States*, 18 Cl. Ct. 418, 423 (1989), *aff'd*, 933 F.2d 991 (Fed. Cir. 1991); *see also Larson v. United States*, 888 F.3d 578, 583-84 (2d Cir. 2018); *Ray v. IRS*, No. 4:08-cv-1067, 2009 WL 3572076, at *6 (D.S.C. Aug. 3, 2009) ("a taxpayer must pay the full amount of the challenged deficiency before this Court may hear an action for a refund," even when the taxpayer has fully paid the amount shown due on an amended return).

In this case, Kyocera filed its original federal income tax return for the period ending March 31, 2018, reporting a total tax liability of $101,087,342 on that return. (ECF No. 41-3 at 2.) The IRS assessed that tax reported on Kyocera's original return. (Steele Decl. ¶ 3.) The IRS was authorized by statute to assess the tax liability Kyocera reported on its return. I.R.C. § 6201(a) ("The Secretary shall assess all taxes determined by the taxpayer"). Kyocera's amended complaint does not allege that it paid the $101,087,342 in tax reported due on its original return before bringing this suit. (ECF No. 41.) As it has not fully paid the assessed liability, Kyocera has not satisfied the well-established *Flora* full-payment rule to challenge that liability.

Kyocera now contends that the tax liability shown on its original tax return is wrong, that it should only have reported the income tax reported on its amended return, and that it is entitled to a refund of any payments over the amount shown on the amended return. (*See* ECF No. 41 at 39-47; *see also* ECF No. 41-3 at 5.) But for jurisdictional purposes, the Court must look to the IRS's assessment, which in this case is based on the taxpayer's own original return. The court does not look to a taxpayer's contention as to what it currently believes the correct amount to be, such as might be shown on an amended return, to determine whether full payment was made. "Neither the Internal Revenue Code nor the Treasury Regulations make any provision for the acceptance of an amended return in place of the original return previously filed." *Badaracco v. Commissioner*, 693 F.2d 298, 301 n.5 (3d Cir. 1982); *see also Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir. 1977) ("[t]he treatment of amended returns is a matter of internal administration solely within the discretion of the Commissioner"); *Evans Cooperage Co., Inc. v. United States*, 712 F.2d 199 (5th Cir. 1983) (courts look to the tax liability shown on an original return, not to any amended return filed at some subsequent date). And for good reason. The Fourth Circuit has held that it would be "utterly disruptive" to tax administration if a taxpayer could "disregard his return and automatically change an assessment based thereon by making an amended return in his favor long after the expiration of the time for filing the original return." *Koch*, 561 F.2d at 1117. Because Kyocera has not paid the original liability assessed against it by the IRS for the tax year ending March 31, 2018, the Court lacks subject-matter jurisdiction to hear this case.

The United States set forth above the complicated factual background that led to it filing a motion to dismiss, then withdrawing that motion, and Kyocera later amending its complaint to seek even more than had been requested in its original suit. But it still all boils down to a simple point: Kyocera has not paid the tax assessment in full. As described above, the IRS mistakenly abated a portion of the tax assessment on Kyocera's tax account without the authorization of the Department of Justice and, as a result, erroneously issued a refund. Once the IRS refers a case to the Department of Justice in litigation, the Department of Justice has exclusive authority to approve adjustments to the tax liabilities at issue in the litigation. *See* 26 U.S.C. § 7122(a); *see also* I.R.M. 25.6.1.10.2.1.1.2(1) (Nov. 18, 2011); IRS Chief Counsel Notice CC-2011-020, 2011 WL 4402105 (Sept. 15, 2011) ("Any abatement made by the Service in order to adjust a referred tax liability must be authorized by Justice or it will be void."). As several courts have recognized, the IRS's post-referral abatement is void because the Department of Justice did not authorize it. *See United States v. Jackson*, 511 F. App'x 200, 203 (3d Cir. 2013) (original assessments remained valid because the IRS's post-referral abatement was void); *Waltner v. United States*, No. 20-16475, 2021 WL 4310800, at *2 (9th Cir. June 4, 2021) (the IRS may reimpose tax liabilities that were improperly abated by the IRS after referral to the Department of Justice). The IRS has now resolved its administrative errors and reversed the erroneous abatement. As a result, Kyocera has an unpaid balance of approximately $36,538,673 for the period ending March 31, 2018. (Steele Decl. ¶ 13). This balance is not a surprise figure—it reflects the amount Kyocera reported due on its original return, less payments and credits. The reversal of the erroneous abatement

restored the account to the posture it was in at the start of this lawsuit. The IRS's

administrative mistakes—which have now been resolved—do not allow Plaintiff to

sidestep *Flora*'s full payment rule.

**B.      *The Flora full-payment rule is fully applicable to the instant case.***

Kyocera's election to pay the I.R.C. § 965(h) net tax liability in installments does

not exempt it from the requirement to comply with *Flora*'s full payment rule. The tax in

dispute is included entirely in Kyocera's 2018 tax year. Under I.R.C. § 965(a), Kyocera's

specified foreign corporations included their post-1986 deferred foreign income in their

subpart F income. In turn, Kyocera included that subpart F income in its gross income for

its 2018 tax year under I.R.C. § 951(a). Under I.R.C. § 11, tax is imposed on all of

Kyocera's income for its 2018 tax year, including the income included under I.R.C.

§§ 965 and 951. Kyocera has availed itself of the right to defer *payment* of part of its

I.R.C. § 965(h) net tax liability—an amount defined by reference to its income included

under § 951(a). But it has not deferred inclusion of the income nor assessment and

imposition of the tax, both of which remain in its 2018 tax year.

*Flora* equally applies in cases where Congress permitted the taxpayer to partially

defer payment of a one-time tax. *See Rocovich*, 933 F.2d at 993-94. In *Rocovich*, the

Federal Circuit considered whether the full-payment rule in *Flora* applied to the estate tax

when I.R.C. § 6166 allowed certain qualifying estates to make estate tax payments in ten

annual installments. *Id*. at 995. There, the taxpayer, like Kyocera, argued that the

installment payment scheme should be treated as an exception to *Flora*. *Id*. The court

rejected this argument because the statutory allowance for taxpayers to pay the estate tax

through installments did not also create an exception to the full payment rule for bringing a refund suit.[7] *Id*. The Federal Circuit distinguished the estate tax from divisible types of taxes, such as excise or employment taxes, which are assessed as the sum of the taxes imposed on multiple separate transactions. *Id*. It reasoned that the estate tax was not a divisible tax because it arose from a single event. *Id*. Therefore, the *Flora* full payment rule was not satisfied because, although the taxpayer had made some installment payments toward his tax liability and he was not delinquent on those payments, he had not fully paid the assessed tax liability before suing for a refund. *Id*.

To begin, any argument by Kyocera based on its election to pay the transition tax in installments must fail given that Kyocera has stopped making those payments. Thus, unlike the taxpayer in *Rocovich*, Kyocera not only has not fully paid the assessment, but it stopped making installment payments toward the assessed tax liability. Kyocera's installment payment schedule that relates to the tax assessment[8] showed that an installment of $10,748,166 was due to be paid in July 2023. Kyocera did not make that full payment. (Steele Decl. ¶ 15.)

Even setting aside Kyocera's failure to make all installment payments, the *Rocovich* court's reasoning applies with equal force here. The installment payment allowance in section 6166 is analogous to section 965(h), the section under which

---

[7] In 1998, Congress created such an exception by statute. It amended I.R.C. § 7422 so that federal courts were deemed to have refund jurisdiction over estate taxpayers that had elected to make installment payments under I.R.C. § 6166, even though they had not satisfied the full amount of tax liability. *See* I.R.C. § 7422(j); Pub. L. No. 105–206, Title III, § 3104(a), 112 Stat 685, 731 (July 22, 1998). No similar statutory provision exists here.

[8] Kyocera later submitted an installment payment schedule that corresponded to the assertion on its amended return that the transition tax component of its March 31, 2018, tax year should be lower. (ECF 41-3 at 24.)

Plaintiff has elected to make installment payments of TCJA's transition tax. Both sections permit taxpayers to defer payment of a single tax over a designated number of years. And the section 965 tax, like the estate tax in *Rocovich*, is not a divisible tax because it arose from a single taxable event. Congress chose to impose a tax on the entire accumulated post-1986 deferred foreign income of specified foreign corporations all at once. *See* I.R.C. § 965(a), (d). *See also Larson v. United States*, 2016 WL 7471338, at *3-*6 (S.D.N.Y Dec. 28, 2016) (holding that penalty imposed under I.R.C. § 6707 was not divisible because it was imposed based on a single transaction—failing to register a tax shelter—even though the penalty was computed based on the aggregate amount invested in the tax shelters), *aff'd on other grounds*, 888 F.3d 578 (2d Cir. 2018).

The section 965 transition tax is not divisible by time period or into multiple individual tax assessments. Even though the transition tax is based on previously accumulated earnings dating back to 1986, it is not determined on a yearly basis, but is a single tax on earnings accumulated since 1986. All years are factored into the computation of the taxpayer's overall income reported on its Form 1120, *U.S. Corporation Income Tax Return*. The IRS assesses the income tax, which includes the section 965 transition tax, as a single assessment. *See Ardalan v. United States*, 748 F.2d 1411, 1414 (10th Cir. 1984) (income tax is a single assessment and is not divisible); *Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 451-52 (2015).

The transition tax thus does not fall within any exception to the full payment rule. *See Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 451-52 (2015) (explaining that taxes and penalties are divisible only when they represent the sum of multiple

assessments, *i.e.*, excise or payroll taxes where a tax arises upon each transaction); *see also Ardalan*, 748 F.2d at 1414 (income taxes are not divisible). Therefore, the divisible tax exception to *Flora*'s full payment rule does not apply, and Kyocera's partial payment of the tax reported on its original return does not create subject matter jurisdiction for this Court. *See also Rodewald v. United States*, 231 Ct. Cl. 962, 963 (1982) (dismissing suit for lack of jurisdiction where the taxpayer had not yet paid all of the payments under an installment plan). Indeed, the Supreme Court just last month, in *Charles Moore v. United States*, rejected a constitutional challenge to the transition tax and it referred to that refund suit as one where "[t]he Moores paid the tax and then sued for a refund." 144 S. Ct. at 1686.

In sum, Kyocera has not fully paid the tax that it originally reported it owed and that was assessed by the IRS. This Court lacks subject matter jurisdiction to hear Kyocera's suit for a refund of federal income taxes, and the complaint must be dismissed. *See Dwight Moore*, 394 F. Supp. 2d at 784-86 (holding that a taxpayer's failure to submit full payment violates *Flora* and deprives the court of subject matter jurisdiction until the challenged tax is fully paid).

**CONCLUSION**

The Court should grant the United States' motion and dismiss this case for lack of subject matter jurisdiction.

Dated: July15, 2024                      Respectfully submitted,

                                        DAVID A. HUBBERT
                                        Deputy Assistant Attorney General

                                  By:   */s/ Daniel B. Causey, IV*_____
                                        DANIEL B. CAUSEY, IV
                                        SC Bar No. 104035
                                        THOMAS J. SAWYER
                                        IN Bar No. 11665-64
                                        SAMUEL G. FULLER
                                        DC Bar No. 1673016
                                        Trial Attorneys, Tax Division
                                        U.S. Department of Justice
                                        P.O. Box 14198
                                        Washington, DC 20044
                                        (t) 202-514-8129
                                        (f) 202-514-4963
                                        Daniel.B.Causey@usdoj.gov

                                        *Of Counsel*:

                                        ADAIR FORD BOROUGHS
                                        United States Attorney
                                        District of South Carolina


## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I served the foregoing *United States' Motion to Dismiss the Amended Complaint* (ECF No. 68) on Plaintiff Kyocera AVX's counsel by electronically filing it with the Clerk of Court using the CM/ECF system.

                                        */s/ Daniel B. Causey, IV*
                                        DANIEL B. CAUSEY, IV
                                        Trial Attorney
                                        DOJ Tax Division

20