IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| KYOCERA AVX COMPONENTS CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> *Defendant*. | Civil Action No. 6:22-cv-02440-TMC |

**UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I: KYOCERA AVX'S CLAIMED SECTION 41 CREDIT**

Pursuant to Federal Rule of Civil Procedure 56, the United States respectfully moves for summary judgment on Count I of Kyocera AVX's (Kyocera) amended complaint, in which Kyocera claims it is entitled to the credit for increasing research activities under I.R.C. § 41 ("section 41 credit") and the tax refund that results from that credit. The Court should reject Kyocera's section 41 credit claim because it failed to create or retain the documents required to substantiate its entitlement to the credit. Though Kyocera commissioned a study to support its section 41 credit claim, the undisputed facts show that the inputs to the study fall short of the detail required to substantiate its claim. Moreover, because Kyocera did not retain any supporting documents and the study is based on mere guesstimates from interviews, the Court should decline any invitation to estimate the amount of the credit.

## STATEMENT OF RELEVANT FACTS

Kyocera is a large multinational corporation with operations in the United States, Europe, and Asia with hundreds of millions of dollars of gross receipts each year. At issue is Kyocera's tax year ending March 31, 2018. On its original tax return filed (on extension) in January 2019, it claimed a section 41 credit of $398,985. ECF No. 41-3 at 4. In July 2021, Kyocera filed an amended tax return claiming a substantially increased credit in the amount of $1,709,147. *Id*. Kyocera's claim is based on three categories of expenses:

- **Employee Wages**: $23,186,512;
- **Supplies**: $1,460,503; and
- **Contract Research**: $320,031.

Ex. 8[1] at tab "A1 Control Group Credit Calc."[2]

Kyocera based this increased amount on a study by PricewaterhouseCoopers ("PwC"). On August 19, 2019, over sixteen months after the close of its tax year at issue, Kyocera retained PwC to "compute the eligible amount" of section 41 credits Kyocera could claim for tax years between 2017 and 2020. Ex. 3 at 1. As the basis for its computations, PwC interviewed 36 Kyocera employees that it deemed subject matter experts ("SMEs"). Ex. 5 at 3; Ex. 10. During the interviews, PwC asked the SMEs questions that would purportedly allow PwC to determine what proportion of certain expenses Kyocera could claim as a section 41 credit. Ex. 2 at 123:20-125:1; 126:13-25;

---

[1] The United States is including an Exhibit List at the end of this motion.
[2] Because this exhibit is an excel spreadsheet, the United States is sending a native copy to chambers and opposing counsel contemporaneously with this filing.

127:21-128:20; Ex. 6 at 3. PwC then allocated the expenses to Kyocera's qualified business components based on the interviews. Ex. 5 at 3-4. A taxpayer's "business component" includes "any product, process, computer software, technique, formula, or invention…held for sale, lease, or license, or used by the taxpayer in a trade or business." I.R.C. (26 U.S.C.) § 41(d)(2)(B). Here, for example, one of Kyocera's business components was the development of a wet electrolytic capacitor, which resulted in a patent.

To determine the amount of time Kyocera employees spent on qualified research activities, PwC asked the selected SMEs about their own work and the work of other employees in their department. Ex. 2 at 123:20-125:1; 140:22-141:2. PwC asked the 36 SMEs to estimate the time spent by over 1,200 Kyocera employees on qualifying research activities and to allocate that time to qualified business components, such as a prototype development resulting in a patent. Ex. 6 at 3–4; *compare* Ex. 8 at Tab C1 Wage QRE Detail (showing 1,203 employees)[3] *with* Ex. 10 (showing 36 SMEs interviewed); Ex. 6 at 3-4 (Kyocera admits the study used employees' estimates to allocate time). From there, PwC applied the estimated percentage to the employee's wages to determine the qualifying expenditure. Ex. 5 at 4. Kyocera provided PwC with its employees' job titles, ID numbers, departments, and wage amounts. *Id.* at 3. The PwC study exclusively relied on interviews to determine employees' time spent on projects; it did not use documentation. *Id.*; Ex. 6 at 3-4; Ex. 7 at 2; Ex. 2 at 114:11-19, 124:7-125:1; 138:1-12.

---

[3] Some Kyocera AVX employees were associated with more than one cost center in Ex. 8 and thus listed more than once.

3

Kyocera does not have a centralized system for tracking employee time, and generally does not track employee time on projects.[4] Ex. 2 at 107:24-108:2; 116:17-22; 117:18-21.

PwC used a similar process for estimating supply costs and contract research expenses. PwC began with potentially relevant supply and contract research expenses from Kyocera's general ledger account balances. Ex. 5 at 4. From there, PwC employees interviewed Kyocera subject matter experts and completed surveys reflecting the interviews. *Id.*; Ex. 2 at 118:9-119:14, 126:13-25; 128:4-20. Like the wage estimates, the same SMEs estimated which supply and contract research expenses were associated with particular projects in interviews years after these expenses were incurred. Ex. 5 at 4; Ex. 2 at 126:13-25; 128:4-20. The PwC study did not identify supply expenses on a per-invoice or per-order level of detail, nor did PwC request this documentation from Kyocera. Ex. 6 at 4; Ex. 2 at 125:15-126:2.

During discovery, Kyocera produced a copy of the study PwC prepared to support Kyocera's section 41 credit claim. Ex. 4. PwC's engagement letter for the study noted that PwC and Kyocera would discuss retention and storage of contemporaneous documentation, but that discussion never happened. Ex. 3 at 2; Ex. 2 at 113:16-114:8. Kyocera did not retain contemporaneous documents that would substantiate the amounts described in the study. Ex. 2 at 114:6-8; Ex. 4 at 4–6. Kyocera has not produced any time tracking documents, supply invoices, or invoices of contracts. Ex. 4. Nor did PwC

---

[4] For some military and government contracts, Kyocera will track employee time on the project. Ex. 2 at 107:5-13. However, Kyocera has not indicated that any government or military contracts were included in the study, nor has it provided any of these time records. Ex. 4.

4

produce any source documents in response to the United States' subpoena. Ex. 7. PwC produced only its workpapers that aggregate and summarize data from the "surveys." *Id*. at 2. PwC did not retain copies of the survey responses, or even the questions asked during its interviews of Kyocera SMEs. *Id*. at 2.

## SUMMARY JUDGMENT STANDARD

The Court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In tax refund suits, the taxpayer has the burden of proof to demonstrate it is entitled to a refund, as well as the amount of the refund. *See Niles Bernent Pond Co. v. United States*, 281 U.S. 357, 361 (1930); *Compton v. United States*, 334 F.2d 212, 216 (4th Cir. 1964). Kyocera has the burden of proving that it is entitled to its claimed research tax credit. The undisputed facts show that Kyocera cannot carry its burden. Thus, the United States is entitled to summary judgment as a matter of law.

## ARGUMENT

In Count I of its amended complaint, Kyocera seeks a tax refund based on its revised section 41 credit. Although Kyocera only seeks a refund for the unpaid portion of its claimed credit ($1,310,162), Kyocera bears the burden of establishing that it is eligible for the entire amount of the credit ($1,709,147). *See United States v. General Dynamics Corp.*, 481 U.S. 239, 245 (1987).

Qualified research is research designed to discover technological information, "the application of which is intended to be useful in the development of a [taxpayer's] new or

5

improved business component." I.R.C. § 41(d)(1). But the mere undertaking of research does not qualify a taxpayer for the credit. The taxpayer must show that "substantially all" of its research activities "constitute elements of a process of experimentation" that relates to "(i) a new or improved function, (ii) performance, or (iii) reliability or quality" of the taxpayer's business component. *Id*.

Thus, to qualify for a section 41 credit for supplies, wages, and contract research expenses, a taxpayer must satisfy four tests: (1) the § 174 expense test; (2) the technological information test; (3) the business component test, and (4) the process of experimentation test, also referred to as the "substantially all" test. *See Little Sandy Coal Co. v. Comm'r*, 62 F.4th 287, 297–98 (7th Cir. 2023); I.R.C. § 41(d)(1). The tests are applied at the business component level. § 41(d)(2). For the purposes of this motion, the United States challenges the taxpayer's compliance with the process of experimentation test and other substantiation requirements.

But Kyocera's failure to retain the underlying documentation to support its expense amounts undermines its section 41 credit claim. Kyocera failed to create or retain documents substantiating its section 41 credit claim. The PwC study cannot cure Kyocera's failure to keep records. Remarkably, PwC failed to keep records generated in its own study, nor did it provide them to Kyocera. Kyocera cannot demonstrate that it satisfies the fourth test—that substantially all of its expenditures on the claimed research projects involved elements of a process of experimentation. And because Kyocera (and PwC) failed to create or retain the appropriate documents, the Court should rule as a matter of law that Kyocera cannot substantiate its section 41 credit.

Kyocera recognizes the precarious nature of its recordkeeping, and we understand that it will urge the Court to allow it to estimate an appropriate credit as something of a best guess under the so-called *Cohan* rule. *See Cohan v. Comm'r*, 39 F.2d 540 (2d Cir. 1930). But the *Cohan* rule does not apply in these circumstances, where Kyocera's lack of records means that it cannot demonstrate its entitlement to the section 41 credit *at all*, rather than only the amount being in question. And courts have refused to allow a *Cohan* estimation where the taxpayer has not kept records that it should have maintained. Finally, the PwC study is an inadequate basis for a *Cohan* estimation because of the limited and unreliable input information it used. Thus, the Court should disallow Kyocera's section 41 credit claim in its entirety.

1. **Because Kyocera lacks substantiating documents, it cannot meet the process of experimentation test.**

For a taxpayer to satisfy the process of experimentation test, substantially all of the claimed research activities must constitute elements of a process of experimentation and be intended for a qualified purpose. *See Little Sandy Coal*, 62 F.4th at 299; Treas. Reg. (26 C.F.R.) § 1.41-4(a)(6). A process of experimentation "involves the identification of uncertainty concerning the development or improvement of a business component, the identification of one or more alternatives intended to eliminate that uncertainty, and the identification and the conduct of a process of evaluating the alternatives." Treas. Reg. § 1.41–4(a)(5)(i). The "substantially all" requirement is met only if at least 80% of the research activities with respect to a business component, measured on a cost or other consistently applied reasonable basis, constitute elements of a process of

experimentation. *Little Sandy Coal*, 62 F.4th at 299. Thus, Kyocera must demonstrate that at least 80% of its claimed research expenses for each business component constitutes an element of a process of experimentation. *Id*. at 302-303.

Kyocera's claimed section 41 credit covers five business components: Tantalum Components, Ceramic Components, Advanced Specialty, Antenna, and Interconnect. Ex. 8 at Tab B1. To meet the process of experimentation test for each of the five business components, more than 80% of the employee research hours spent on the business component must have been elements of a process of experimentation. Treas. Reg. § 1.41-4(a)(6). Instead of using the "substantially all" test on a per-component level, the PwC study used the "substantially all" test on a per-employee level. *Id.* at Tab C1; *see also* Ex. 5 at 3. Thus, for any employee whom the interviewed SME estimated spent 80% or more of their time on a business component, the PwC study claimed 100% of that employee's wages as a qualified business expense. Ex. 8 at Tab C1.

Two flaws with the PwC study demonstrate Kyocera's inability to meet the process of experimentation test on a per-business-component level. First, Kyocera's lack of documentation renders it unable to demonstrate that it meets the process of experimentation test. Because Kyocera did not track employees' time on particular projects included in the study, it is unable to prove that the included employees satisfied the 80% thresholds. Ex. 2 at 107:24-108:2, 116:19-22; 117:18-21. PwC's estimates of qualified research expenses are likewise insufficient to substantiate Kyocera's claimed section 41 credit. In *Little Sandy Coal*, the taxpayer, like Kyocera, calculated wages attributable to a process of experimentation "by applying to each employee's total wages

8

an allocation percentage equal to the estimated portion of the employee's time spent on qualified research." *Little Sandy Coal*, 62 F.4th at 296. There, the court of appeals held that "[s]omething more, such as documentation of time spent on activities, is necessary." *Id*. The Court held that the taxpayer's "shortcut estimates of experimentation-related activities will not suffice. Something more, such as documentation of time spent on activities, is necessary." *Little Sandy Coal*, 62 F.4th at 308. *See also CRA Holdings US, Inc. v. United States*, 2018 WL 4001675, at *8 (W.D.N.Y. Aug. 22, 2018) (*Cohan* rule does not "permit Plaintiffs to conflate...any such estimation with Plaintiffs' burden to demonstrate that qualified services underlying Plaintiffs' estimates of related time, were, in fact, performed in connection with each project"). So too here. The PwC study lacks anything "more" as it relied on estimates, not documentation, to associate employee time with research activities. *Id.*

The study provides no description of the particular tasks employees performed on business components that qualified as a process of experimentation. Ex. 5; Ex. 11. Nor does the study explain how it determined time spent on a business component qualified as engaging in a process of experimentation rather than non-qualified activities on the project. *Id*. Without any additional information, it is impossible to know how—if at all—the interviewed SMEs accounted for employees spending time on non-qualified activities, which might include emails, meetings, cleaning equipment, invoicing, or other tasks that, under Treas. Reg. § 1.41-2(c)(1), would not count toward the "substantially all" threshold under Treas. Reg. § 1.41-2(d)(2).

Second, the PwC study included numerous employees whose job duties did not constitute elements of a process of experimentation, and Kyocera has offered no evidence to the contrary. Kyocera claims wages for employees such as its Chief Technology Officer, Chief Operating Officer, VP of Semiconductor Operations, and VP of Sales in its expenses for the section 41 credit. Ex. 8 at Tab C1. But although "direct supervision" is part of a process of experimentation, *see* I.R.C. § 41(d)(2)(B)(ii), "'[d]irect supervision' does not include supervision by a higher-level manager to whom first-line managers report, even if that manager is a qualified research scientist," Treas. Reg. § 1.41-2(c)(2). And Kyocera also includes wages of employees in areas such as technical sales, manufacturing, and quality control without substantiating their research activities. *See* Ex. 8 at Tab C1. Beyond including employees from non-research departments, Kyocera claims wages of employees whose titles, such as Administrative Assistant, Technical Marketing Manager, Quality Manager, Quality Specialist, President, Planner, and Technical Buyer denote duties that do not constitute elements of a process of experimentation. *See id.* These employees' duties clearly do not include elements of a process of experimentation, and the Court should also exclude their wages from the numerator of the "substantially all" calculation. Moreover, the Treasury Regulations exclude quality control work from qualified research. Treas. Reg. § 1.41-4(c)(5) Thus, non-research and senior employees' wages only belong in the denominator of the "substantially all" calculation, further demonstrating the impossibility of Kyocera reaching the 80% threshold for each business component based on the PwC study.

Kyocera's inclusion of the employees described above is a particularly important flaw in its research credit claim because the PwC study does not provide a description of employees' roles on a project beyond their job title. For example, Row 1167 on the spreadsheet shows the data for a Technical Marketing Manager in the Technical Sales and Marketing functional area. Ex. 8 at Tab C1. The study concludes that the Technical Marketing Manager spent 80% of his time conducting qualified research on one of Kyocera's business components, "Ceramics Components," and included 100% of the employee's wages as a qualified research expense. Ex. 8 at Tab C1. But the PwC study provides no information to show that this employee, whose title relates to sales and marketing, was engaged in any part of a process of experimentation. This is not an isolated example. As described above, the study claims qualified research expenses for many employees whose titles indicate that they played no role in any part of a process of experimentation. These employees' titles include Administrative Assistant (Row 226, 80% of total time; 100% of wages claimed), Quality Manager (Row 1286, 70% of total time), President (Row 796, 50% of total time), and Planner (Row 798, 50% of total time). *Id.* Kyocera is asking the Court to take its (and PwC's) word that every one of these employees spent significant portions of their time on qualified research activities. "But Section 41(d) requires [the court] to walk by sight, not by faith." *Little Sandy Coal*, 62 F.4th at 308. Kyocera must provide sufficient substantiation to show that the employees for whom it claims wages as a qualified research expense were engaged in qualified research activities. This includes, at a minimum, a description of its employees' roles and

activities on a business component. But the study does not include this information, and Kyocera has not provided it in discovery.

Kyocera bears the burden of persuasion at trial, and the United States has pointed out the absence of evidence that supports Kyocera's claim that at least 80% of its claimed research expenses for each business component constitutes an element of a process of experimentation. Unless Kyocera can come forward with sufficient evidence, the Court should grant summary judgment to the United States. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532 (4th Cir. 2015) (explaining summary judgment burdens).

### 2. Kyocera AVX cannot substantiate the amount of its claimed section 41 credit.

"[B]ecause tax credits and deductions are a matter of legislative grace, taxpayers bear the burden of proving entitlement to the credits they claim on their returns." *Norfolk S. Corp. v. Comm'r*, 140 F.3d 240, 244 (4th Cir. 1998). A taxpayer claiming a section 41 credit "must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit." Treas. Reg. § 1.41-4(d); *see Shami v. Comm'r*, 741 F.3d 560, 569 (5th Cir. 2014) (holding employee testimony insufficient to substantiate the amount of time those employees spent performing qualified services). For example, payroll records that "log how much time employees work, not the tasks they perform or supervise" are insufficient substantiation. *Moore v. Comm'r*, 101 F.4th 509, 510 (7th Cir. 2024).

To begin, Kyocera did not create or retain documents that substantiate its section 41 credit claim. Kyocera generally did not track employee time spent on research projects or retain other documentation sufficient to support its claim. Ex. 2 at 107:24-108:2, 114:6-8; 116:19-22; 117:18-21. Kyocera did not produce any documents beyond the PwC study to substantiate its section 41 credit amount in response to the United States' requests for production, which requested in-depth expense information about its claimed expenses for wages, supplies, and contract research. Ex. 4 at 4–6.

The PwC research study—wholly devoid of sufficient expense records—cannot recreate or otherwise cure Kyocera's recordkeeping shortcomings. The study, which was based on post-hoc interviews of just 36 SMEs, used estimates to determine Kyocera's research expenses rather than documentation. Ex. 2 at 124:18-23; Ex. 5 at 3–4; Ex. 6 at 3–4. During the interviews, the selected SMEs provided their "best estimate" of the time that they and other employees spent on qualified research during the 2018 tax year, years after that work was completed. Ex. 2 at 124:18-23, 125:2-8. The interviewed SMEs also allocated supply and contract research expenses to the various research projects. *Id.* at 126:13-25; 128:4-20. These allocations, too, were post-hoc estimates unsupported by any records maintained by Kyocera. *Id.*

PwC failed to retain key documents to substantiate even the amounts in its study. Its production in response to a subpoena from the United States consisted of various internal spreadsheets that it used to arrive at the conclusions in the study, but none of the underlying documents used to create the spreadsheets. *See* Ex. 7 at 2. The spreadsheets, described by PwC as workpapers, were used to calculate the figures used in the section

13

41 credit claim. The spreadsheets used data from sources such as the survey, but did not include the factual inputs beyond the resulting numbers, such as employee wages and time percentage estimates, used for the calculations. *Id*. In addition to lacking documents sufficient to substantiate the associations between the claimed research projects and Kyocera AVX's labor, supply, and contract research costs, PwC did not retain records from the surveys it conducted to estimate the costs claimed in the study. *Id.* Nor did it provide copies of the completed surveys to Kyocera. Ex. 2 at 119:1-14.

Thus, given the lack of documentation, Kyocera is unable to substantiate its claimed section 41 credit, and the Court should disallow the credit.

### 3. The Court should not permit Kyocera to resort to the *Cohan* rule as a cure for its recordkeeping failure.

When a taxpayer establishes it is eligible to claim a tax credit but cannot demonstrate the precise amount, courts in appropriate circumstances can estimate the amount of the credit, including for a section 41 credit. *Cohan v. Comm'r*, 39 F.2d 540 (2d Cir. 1930); *Little Sandy Coal*, 62 F.4th at 301. But a Court may only make a *Cohan* estimation where the taxpayer proves that they have satisfied the four tests to qualify for the section 41 credit. *Little Sandy Coal*, 62 F.4th at 301; *see also Betz v. Comm'r*, T.C. Memo. 2023-84, 2023 WL 4366431, at *28 (July 6, 2023).[5] Here, Kyocera's failure to meet the process of experimentation test precludes a *Cohan* estimation.

---

[5] Alternatively, a taxpayer can show that a particular employee performed qualified services with respect to a particular subset of the component, sometimes called the "shrinking-back" rule, and then invoke *Cohan*. *See Betz*, 2023 WL 4366431, at *28. But as explained above, Kyocera failed to keep track of exactly what each employee did, which precludes this application of *Cohan*. *See id.* at *43.

Even if the Court finds that Kyocera satisfied the process of experimentation test, the Court is "not obligated to make an estimate under the *Cohan* rule" when the claimed expenses "are of a sort for which the taxpayer could have and should have maintained the necessary records." *Lerch v. Comm'r*, 877 F.2d 624, 628 (7th Cir. 1989); *see also Pridgen v. IRS*, 2 F. App'x 264, 274–75 (4th Cir. 2001) (declining to apply *Cohan* where taxpayer lacked substantiation). When a taxpayer lacks "sufficient evidence to satisfy the trier that at least the amount allowed in the estimate [of expenses underpinning a tax credit] was in fact spent or incurred for the stated purpose," estimating the amount of the tax credit "would be unguided largesse." *Shami*, 741 F.3d at 569 (quoting *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957)). For the Court to estimate the amount of its expenses underpinning the amount of the tax credit, Kyocera must come up with evidence supporting the amount of its claimed expenses. It has not done so and cannot do so.

Kyocera failed to retain adequate documentation to support an estimate, and PwC's study that began well after the fact did not cure that failure. As discussed above, neither Kyocera nor PwC retained sufficient records of which projects Kyocera AVX's employees spent their time on and even failed to retain copies of the surveys PwC distributed years later to estimate employee time, supplies, and contract research expenses. Ex. 2 at 107:24-108:2, 114:6-8; 116:19-22; 117:18-21; Ex. 6 at 3-4; Ex. 7 at 2. Kyocera admits that the claimed expenses were based on employee estimates made long after the close of the relevant tax year. Ex. 2 at 124:18-23; 126:13-25; 128:4-20. Kyocera also admits that it had the ability to create and maintain detailed records concerning

employees' time spent on the projects. Ex. 2 at 107:9-23. Indeed, Kyocera *did* track employee time and various expenses for other government or defense projects, but not for the projects for which it claims a section 41 credit.[6] *Id*. Because Kyocera could and should have retained supporting documents but failed to do so, the Court should decline to estimate its research expenses under *Cohan*. *See Lerch*, 877 F.2d at 628.

Lacking any requisite documents for substantiation, we understand that Kyocera intends to rely on the PwC study as a basis for a *Cohan* estimate. But this study too is inadequate for the task. The study draws its data for the time employees spent on research projects solely from after-the-fact interviews of some of Kyocera AVX's employees. The interviewed employees completed surveys to estimate the time they spent on research projects, as well as the time spent by other employees in their component. Ex. 2 118:9-119:14. Kyocera admits that the interviews provided only estimates as to the time employees spent on research and development projects. Ex. 2 at 24:18-23. Relying on such "estimations and approximations" from a few individuals' memory falls short of the basic threshold for a *Cohan* estimate. *United States v. De Leon*, No. 1:17-CV-48, 2018 WL 1750473, at *4 (S.D. Tex. Feb. 21, 2018) (taxpayer's after-the-fact estimations based solely on interviews without other evidence did not provide a reasonable basis for making a *Cohan* estimate).

---

[6] Kyocera AVX has not alleged that any of the research at issue in this case involved government or defense projects, nor has it provided any underlying records for those projects. Ex. 4.

Five reasons highlight why the Court should not allow the PwC study to serve as a basis for an estimate. First, the PwC study includes interviews of just 36 employees to estimate the time spent by over 1,200 employees on research and development. The interviews go beyond the interviewee's personal knowledge by including estimates of the time worked by other employees. The interviewees were responsible for estimating the time of too large of a group for them to possess sufficient knowledge of time spent by other employees to support an accurate estimate. Further, interviewees were tasked with making estimates for employees up and down levels of Kyocera AVX's organizational hierarchy. For example, frontline managers provided estimates of time spent by not only their direct reports, but also by senior executives such as Kyocera AVX's COO. This broad scope diminishes the interviews' reliability.

Second, and relatedly, the study is founded on multiple layers of hearsay. The study is hearsay itself; the statements of SMEs in the survey are hearsay; and the SMEs' knowledge of other employees' time is likely also based on yet another level of hearsay. Or, at minimum, Kyocera has failed to demonstrate the foundation for those SMEs' knowledge of how other employees spent their time. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (internal quotation marks omitted). To be sure, a hearsay statement can be considered if the statement could be offered in an admissible form at trial. *Id.* at 1293-94. But where there are multiple levels of hearsay, each level must meet a hearsay exception for the evidence to be considered. *See* Fed. R. Evid. 805. Even if the 36 SMEs could have personal knowledge to their own

17

time in Kyocera's 2018 tax year, they lack a non-hearsay foundation for how the remaining 1,167 employees named in the study spent their time. Accordingly, the PwC study cannot be put in admissible form for trial.

Third, substantial time elapsed between when employees performed the relevant work and when PwC conducted its interviews, further reducing the interviews' reliability. With the exception of some preliminary work, PwC began its study in mid-to-late 2019, over a year after Kyocera AVX's 201803 tax year concluded. Ex. 2 at 124:18-23, 125:2-8. This gap hinders the interviewees' ability to recall specifics about their time spent on projects—and the time spent by other employees. As a result, there is an increased likelihood of inaccuracies in the time percentages reported.

Fourth, the PwC study lacks any description of what research was performed by specific employees. At best, the PwC study ties some sweeping descriptions of groups of job categories, such as "production supervisors, operators, and technicians," "project engineers, process engineers, engineering technicians, and technical supervisors," or "marketing engineers, technical sales personnel, and product managers" to its five broadly-drawn business components. Ex. 8 at Tab C1; Ex. 11 at 10-12. But the PwC study offers no explanation of the employees' roles beyond their job titles, and even its descriptions of groups of job categories fail to account for numerous titles held by the employees whose wages it claims as research expenses. And, as discussed above, job titles alone are insufficient to tie employees to qualifying research activities. Without more detailed information, it is impossible for the Court to make an estimate of the time spent by the Kyocera employees conducting qualified research.

Finally, neither Kyocera nor PwC kept notes or records from the study used to arrive at the time percentages that fed into the study's calculations. PwC and Kyocera did not retain any of the surveys from the employee interviews. They also failed to produce any documents showing the inputs PwC used to perform its calculations and estimates for wages, supplies, and contract expenses. The lack of the underlying information compounds the problems identified above. With no way to review and evaluate the estimations in the PwC study, the Court cannot make a *Cohan* estimation.

Because of the limitations of the interviews on which PwC based its study, the study cannot serve as a basis for a *Cohan* estimation.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion for partial summary judgment.

Dated: July 19, 2024                    Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

By:   */s/ Samuel G. Fuller*
SAMUEL G. FULLER
DC Bar No. 1673016
DANIEL B. CAUSEY, IV
SC Bar No. 104035
THOMAS J. SAWYER
IN Bar No. 11665-64
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
(t) 202-598-3880

(f) 202-514-4963
Samuel.G.Fuller@usdoj.gov

*Of Counsel*:

ADAIR FORD BOROUGHS
United States Attorney
District of South Carolina

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, I served the foregoing document on Plaintiff Kyocera AVX's counsel by electronically filing it with the Clerk of Court using the CM/ECF system.

*/s/ Samuel G. Fuller*
SAMUEL G. FULLER
Trial Attorney
DOJ Tax Division

20