IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| KYOCERA AVX COMPONENTS CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) C/A No. 6:22-cv-02440-TMC <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

KYOCERA AVX Components Corporation ("KYOCERA AVX"), through undersigned counsel, files its Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint. *See* ECF No. 69 ("Motion").

On June 15, 2023, KYOCERA AVX filed its Amended Complaint seeking a refund of taxes it paid for its tax year ending March 31, 2018 ("2018"). *See* ECF No. 41. There is no dispute that on that date, KYOCERA AVX's 2018 tax "assessment," as set forth in the records of the Internal Revenue Service ("IRS"), was $57,233,418. There is also no dispute that on that date, KYOCERA AVX had paid approximately $76,321,946 toward its 2018 tax assessment. Thus, there is no dispute that on the date KYOCERA AVX filed its Amended Complaint (ECF No. 41), it had paid *more* than the full amount of its 2018 tax assessment.

The Government now seeks dismissal for lack of subject matter jurisdiction claiming that on September 25, 2023, the IRS increased KYOCERA AVX's 2018 tax assessment and, as a result, KYOCERA AVX has no longer paid the full amount of its tax assessment. As set forth herein, the Government's motion should be denied because: (1) subject matter jurisdiction is determined at

1

the time the Amended Complaint was filed and there is no dispute that at that time KYOCERA AVX had fully paid its tax assessment; (2) the IRS's attempt to increase KYOCERA AVX's tax assessment is invalid because the IRS failed to follow the required statutory deficiency procedures; and, (3) the IRS's attempt to increase KYOCERA AVX's tax assessment constitutes an improper attempt to defeat this court's jurisdiction.[1]

## FACTUAL BACKGROUND

On or about January 11, 2019, KYOCERA AVX timely filed its 2018 tax return, Form 1120, reporting a tax liability of tax liability of $101,087,342.  See Exhibit 1, p. 1, ("TAX PER RETURN"); (IRS account transcript, dated March 17, 2023).

On or about April 8, 2019, the IRS processed KYOCERA AVX's 2018 return and recorded its tax assessment as $101,087,342.  See Exhibit 1, pg. 2 ("PROCESSED DATE"); see also, ECF No. 69-A, ¶3 (Declaration of IRS Employee Allison R. Steele (Sept. 25, 2023)); ("Steele Declaration").

On July 6, 2021, KYOCERA AVX filed its 2018 amended return, Form 1120-X, reporting a $45,163,528 decrease in its previously reported tax liability, and a corrected tax liability of $55,923,814.  See Exhibit 2; see also, Steele Declaration, ¶4.  Because the IRS had not acted on KYOCERA AVX's amended return for over a year, on July 28, 2022, KYOCERA AVX filed its complaint for refund in this matter.  See ECF No. 1.

On or about March 13, 2023, the IRS accepted, in part, KYOCERA AVX's 2018 amended return.  The IRS then abated $43,853,924 of KYOCERA AVX's original 2018 tax assessment,

---

[1] KYOCERA AVX also relies on, and incorporates herein by reference, the arguments asserted in its response to the Government's previous Motion to Dismiss.  See ECF No. 24 (response); ECF No. 16 (motion).

resulting in a new tax assessment of $57,233,418.  *See* Exhibit 1, p. 5 ("Reduced or removed prior tax assessed.");[2] *see also*, Steele Declaration, ¶10.

As of March 13, 2023, KYOCERA AVX had paid $76,321,946 toward the IRS's new tax assessment of $57,233,418.  *See* Steele Declaration, ¶10 (stating that after the abatement, IRS records showed that KYOCERA AVX "had paid more in tax than was owed"); ¶13 (listing payments as of July 15, 2022, totaling $76,321,946).   Because it had paid more than the amount of its tax assessment, on or about March 14, 2023, the IRS sent KYOCERA AVX a 2018 tax refund of $13,355,782.77.  *See* Exhibit 4 (check from U.S. Treasury); *see also* Steele Declaration, ¶10.

On June 15, 2023, KYOCERA AVX filed its Amended Complaint seeking a refund of the remaining taxes it paid for 2018.  *See* ECF No. 41.

On September 25, 2023, the IRS, acting at the direction of the Justice Department made a supplemental tax assessment of $43,853,924 against KYOCERA AVX for 2018.  *See* Exhibit 5, p. 5 ("Additional Tax Assessed"); (IRS account transcript, dated October 5, 2023).  The IRS did not follow the statutory deficiency procedures when it made its supplemental assessment.  *See* Steele Declaration, ¶13.

The Government asserts the IRS's $43,853,924 abatement, and its $13,355,782.77 tax refund, were mistakes.  *See* Steele Declaration, ¶¶ 10 & 13.  The Government does not assert the abatement and refund were made to settle or compromise any dispute.  *See* Steele Declaration, ¶¶ 10 & 13.

---

[2] Original assessment of $101,087,342, *minus* the IRS's abatement of $43,853,924, *equals* a new assessment of $57,233,418.

# ARGUMENT

I. At the time KYOCERA AVX filed its Amended Complaint it had fully paid its 2018 tax assessment.

Under *Flora v. United States*, 362 U.S. 145 (1960), a taxpayer cannot challenge a tax assessment in federal court unless it has paid the full amount of the tax assessment at issue. Citing *Flora*, the Government asserts this Court does not have subject matter jurisdiction over this matter because KYOCERA AVX has not paid the full amount of its most recent tax assessment, which the IRS made in September 2023, three months after KYOCERA AVX filed its Amended Complaint.

Subject matter jurisdiction, however, "depends on the state of things at the time of the action brought." *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (*citing Mollan v. Torrance*, 22 U.S. 537 (1824)). If a plaintiff files an amended complaint, courts look to the amended complaint to assess jurisdiction. *See United States v. Collegiate Funding Servs.*, 469 Fed. Appx. 244, 254 (4th Cir. 2012) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.") (*citing Rockwell*); *see also*, *Wellness Community v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) ("[O]ur jurisdictional inquiry must proceed on the basis of the First Amended Complaint, not the original one."; "Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .") (*quoting* C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1476 at 556-57, 559 (1990)); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) ("Our conclusion that we must look to the amended complaint in assessing . . . jurisdiction is consistent with the general rule that an amended complaint ordinarily supersedes the original and renders it of no legal effect . . . .").

4

KYOCERA AVX filed its Amended Complaint on June 15, 2023. *See* ECF No. 41. As it must, the Government admits that at that time the IRS's records "showed that the taxpayer had paid more in tax than was owed." *See* Steele Declaration, ¶10. In addition, KYOCERA AVX's "account transcript" shows that at that time KYOCERA AVX had an overpayment credit of $30,498,309. *See* Exhibit 1, p. 1. And on March 13, 2018, the IRS sent KYOCERA AVX a letter stating that for its FY2018 it had an overpayment credit of $43,854,091.77. *See* Exhibit 2. Lastly, on or about March 23, 2023, KYOCERA AVX received a $13,355,782.77 tax refund from the U.S. Treasury. *See* Exhibit 3 (copy of check).

There is no dispute that at the time KYOCERA AVX filed its Amended Complaint it has fully paid its 2018 tax assessment as then set forth in the IRS's records. Accordingly, under the "full payment" rule announced in *Flora v. United States*, this Court has subject matter jurisdiction over KYOCERA AVX's refund suit.

II.     The IRS's unilateral increase to KYOCERA AVX's tax assessment is invalid.

The Government's motion hinges on the increase the IRS made to KYOCERA AVX's tax assessment *after* it filed its Amended Complaint. Specifically, according to the Declaration of IRS employee Allison Steele, on September 25, 2023, the IRS unilaterally increased KYOCERA AVX's tax assessment by $43,853,924. *See* Steele Declaration, ¶13. Following the increase, IRS records reflect that KYOCERA AVX has not fully paid its 2018 assessment. *See* Steele Declaration, ¶13. The IRS's unilateral increase is invalid because the IRS did not follow the required statutory assessment procedures before increasing KYOCERA AVX's tax assessment. And contrary to the Government's assertions, § 7122 does not excuse compliance with the statutory assessment procedures.

    a.     The IRS failed to follow the required statutory deficiency procedures.

The IRS can establish a taxpayer's tax liability only by making an "assessment" pursuant to the procedures set forth in the Tax Code. *See* 26 U.S.C. §§ 6203-6216. An assessment is statutorily required and constitutes the formal recording of a taxpayer's tax liability in the IRS's records, fixing the amount due. *See* 26 U.S.C. § 6203; *Bull v. United States*, 295 U.S. 247, 259 (1935) (noting that the "assessment" is the formal action by the taxing authority setting the amount of tax due).

The IRS's authority to assess taxes is broad but not unlimited. Typically, when the IRS receives a tax return it evaluates the return for accuracy. If the IRS determines the return is satisfactory, it enters an assessment in its records for the amount of tax the taxpayer has calculated to be owing. *See* 26 U.S.C. § 6201(a)(1). If the IRS disagrees with the taxpayer's determination of his or her tax liability, it can assess a greater amount ***but only after*** it issues a notice of deficiency to the taxpayer and gives the taxpayer 90 days to challenge its calculations in U.S. Tax Court. *See* 26 U.S.C. §§ 6212(a) & 6213(a). The IRS generally has three years from the date the return is filed to assess an additional liability. *See* 26 U.S.C. § 6501(a).

If the IRS discovers that "any assessment is imperfect or incomplete in any material respect," it may decrease the tax due by abating all or a portion of the assessment. *See* 26 U.S.C. §§ 6204(a) & 6404(a). Or the IRS can increase the tax due by making a "supplemental assessment" within three years of the filing of the return. *See* 26 U.S.C. §§ 6204 & 6501(a). If the IRS makes a supplemental assessment, however, it must follow the deficiency procedures described above. *See* 26 U.S.C. § 6204(b) ("Restrictions on assessment. For restrictions on assessment of deficiencies in income, estate, gift, and certain excise taxes, see section 6213.").

The IRS will typically issue a refund if a taxpayer's reported liability is less than the amount paid to the U.S. Treasury. Occasionally, the IRS makes mistakes when issuing refunds, for

example by miscalculating the refund amount or by issuing more than one refund check. In such cases the IRS can reclaim the erroneous refund in one of two ways. The IRS can bring an erroneous refund suit within two years after the refund was made. *See* 26 U.S.C. §§ 7405 & 6532(b). Or the IRS can pursue a "supplemental assessment" following the procedures set forth above – issuing a notice of deficiency and providing the taxpayer with the opportunity to challenge the proposed deficiency in U.S. Tax Court. *See* 26 U.S.C. §§ 6204(b), 6212, & 6213.

Pursuant to § 6201(a)(1), when KYOCERA AVX filed its original 2018 return the IRS assessed the $101,087,342 tax liability reported on that return. Pursuant to § 6404(a), when KYOCERA AVX filed its amended 2018 return the IRS accepted it and abated $43,853,924 of the original assessment, leaving KYOCERA AVX with a revised tax assessment of $57,233,418. *See* Exhibit 1, p. 5; ("Reduced or removed prior tax assessed."); *see also*, Note 2, *supra*.

Although the Government asserts the IRS's abatement of KYOCERA AVX's 2018 tax assessment and the issuance of a refund were mistakes, the IRS did not follow the appropriate procedures in attempting to correct those mistakes. The Government did not file a lawsuit, pursuant to 26 U.S.C. § 7405, to collect the refund paid to KYOCERA AVX. And the IRS did not issue a notice of deficiency, pursuant to 26 U.S.C. § 6204, to increase KYOCERA AVX's tax liability by the amount of abatement. Because the Government failed to follow the statutory requirements for recovering an erroneous refund or assessing a supplemental deficiency, its current assessment against KYOCERA AVX is invalid.

The Fourth Circuit addressed this precise issue in *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997), holding that the IRS may not reverse an "erroneous" refund and reinstate the original assessment without first satisfying the Tax Code's deficiency procedures. The relevant facts in *Singleton* are practically identical to the relevant facts here. In *Singleton*, the taxpayers

7

filed a joint federal individual income tax return for 1987. *See id*. at 834. Their tax advisor determined they were not entitled to the full amount of a business credit, and the Singletons reported their tax liability in accordance with that advice. *See id*. But in 1988, the IRS determined the Singletons were, in fact, entitled to the full business credit. Accordingly, the IRS reduced the Singletons' tax liability and issued a refund. *See id*.

Nearly three years later, in 1991, the IRS changed its view, reversed its previous abatement of the Singletons' tax liability, and reinstated the original tax assessment. *See id*. The IRS did not issue a notice of deficiency; instead, it argued that the erroneous refund was attributable to an error and, thus, could be reversed without following the Code's deficiency procedures. *See id*. at 835-36.

The issue before the Fourth Circuit was "whether the IRS was required by statute to issue a notice of deficiency to the Singletons prior to making its 1991 supplemental assessment." *See id*. at 836. In holding for the Singletons, the Court identified the "congressionally-mandated procedures" that apply when the IRS seeks to make supplemental assessments. In particular, the Fourth Circuit noted that § 6204, which authorizes the IRS to make supplemental assessments, explicitly incorporates the Code's deficiency assessment procedures. *See id*. at 837. Sections 6204(b) and 6213(a) prohibit the IRS from issuing a supplemental assessment without first issuing a notice of deficiency – even if the IRS issued an "erroneous" refund and even if the IRS is attempting to reinstate the original tax liability. *See id*. at 837-38.[3]

---

[3] Other Circuits have rejected IRS attempts to revive a prior assessment following an erroneous abatement without following the statutory deficiency procedures. *See e.g., Bilzerian v. United States*, 86 F.3d 1067 (11th Cir. 1996); *Clark v. United States*, 63 F.3d 83 (1st Cir. 1995); *O'Bryant v. United States*, 49 F.3d 340 (7th Cir. 1995); *United States v. Wilkes*, 946 F.2d 1143 (5th Cir. 1991).

As in *Singleton*, here the IRS abated KYOCERA AVX's tax assessment and then later reversed that abatement without first following the required statutory deficiency procedures. As in *Singleton*, the IRS's attempt to reverse its previous abatement of KYOCERA AVX's tax assessment was invalid.

      b.    <u>Section 7122 does not excuse compliance with the required statutory assessment procedures.</u>

Citing § 7122(a), the Government asserts the IRS can unilaterally reverse its abatement of KYOCERA AVX's tax assessment because the IRS was not authorized to make such abatement. According to the Government, the IRS did not have the authority to abate because once a case has been referred to the Justice Department, only the Justice Department can "compromise" the case. *See* ECF No. 69, p. 15. Regardless of whether or not the IRS was authorized to compromise this matter, the Government's reliance on § 7122 is misplaced because the IRS's reduction of KYOCERA AVX's tax assessment was not a "compromise."

Although § 7122 does not provide a definition of "compromise," the text of the statute confirms it means "settlement." Section 7122(b) imposes strict documentation requirements on the IRS when it makes a "compromise" with a taxpayer. Specifically, for any compromise of $50,000 or more, the IRS must maintain a General Counsel opinion stating the reasons for the compromise, as well as a statement setting forth the original tax, penalties, and interest due, and the amount "actually paid in accordance with the terms of the compromise." *See* § 7122(b). This record keeping requirement – of amounts originally due and amounts paid pursuant to a compromise – confirms that "compromise" as used in § 7122(a) is synonymous with settlement.

IRS regulations, the Internal Revenue Manual, and the Fourth Circuit all confirm what is obvious from the text of § 7122 – that "compromise" is synonymous with "settlement."[4]

The Government admits the IRS's abatement did not constitute a compromise or settlement of this ongoing dispute. Rather, the Government asserts the abatement was simply a mistake. *See* Steele Declaration, ¶¶ 10 & 13. Likewise, KYOCERA AVX does not contend the abatement represents a compromise or a settlement. Because this matter does not involve a compromise, and because § 7122 only applies to compromises, § 7122 does not apply here.

The Government, however, seeks to expand the reach of § 7122 by asserting that after a case has been referred to the Justice Department, "any abatement" made by the IRS is automatically void because after referral only the Justice Department can "compromise" a tax dispute. *See* ECF No. 69, p. 15. But a "compromise" is not the same as an "abatement." According to the IRS's own manual, a compromise is an agreement between parties to settle a matter, while an abatement is a decision by the IRS to reduce a tax liability to the correct amount. *See* IRM 8.23.1.1.1 (08-23-2021) (defining "offer-in-compromise" as "an agreement between a taxpayer and the government that, generally, settles a tax liability in exchange for payment of less than the full amount owed"); IRM 25.6.1.10.1.1 (04-26-2023) (defining "abatement" as "the reduction or elimination of an assessment"). Under traditional methods of statutory interpretation, different words are presumed to have different meanings. *See Bostock v. Clayton County*, 590 U.S. 644, 792 (2020) ("When interpreting statutes, as the Court has often said, we usually presume

---

[4] Treas. Reg. § 301.7122-1(e)(5) ("Acceptance of an offer to compromise will conclusively **settle** the liability of the taxpayer specified in the offer.") (emphasis added); IRM 8.23.1.1.1 (08-23-2021) (defining "offer-in-compromise" as "an agreement between a taxpayer and the government that, generally, **settles** a tax liability in exchange for payment of less than the full amount owed") (emphasis added); *Brooks v. U.S.*, 833 F.2d 1136, 1145 (4th Cir. 1987) ("Sections 7121 and 7122 of the tax code govern **settlement** of disputed tax liabilities . . . .") (emphasis added).

differences in language convey differences in meaning."). Thus, it is inappropriate for the Government to read the word "abatement" into § 7122 which only addresses "compromises." *See id.* ("We may not read a specific concept into general words when precise language in other statutes reveals that Congress knew how to identify that concept.").

Furthermore, the authorities the IRS cites to support its expansive reading of § 7122 are unavailing. The IRS primarily relies on sections of the Internal Revenue Manual and an IRS Chief Counsel Notice. Neither constitute binding legal authority. Rather, they merely reflect the IRS's opinions. *See Nitschke v. Commissioner*, 795 Fed. Appx. 254, 257 (5th Cir. 2019) ("We have previously held that the Internal Revenue Manual is not legally binding and 'do[es] not create rights in the taxpayer.'") (citations omitted); *United States v. Rum*, 995 F.3d 882, 893 (11th Cir. 2021) (the Internal Revenue Manual "does not have the force of law"); *United States v. Schik*, 2022 U.S. Dist. LEXIS 41148, *9 (S.D.N.Y. Mar. 8, 2022) ("As a threshold matter, it bears noting that the IRS Memo is not binding legal authority; the IRS Memo reflects what the Service *expected* would be the standard applied by courts . . . . In essence, it is a policy statement.").

The Government also relies on two unpublished court opinions – *United States v. Jackson* and *Waltner v. United States* – both of which are readily distinguishable from the facts at issue here. In *United States v. Jackson*, 511 Fed. Appx. 200 (3d Cir. 2013), the government obtained a default judgment against a taxpayer for approximately $469,000. Almost two years later, the taxpayer filed a motion to compel the government to satisfy the judgment because, according to the taxpayer, he had reached a settlement with the IRS and paid the reduced amount due per the settlement – approximately $41,729. The District Court denied the request to satisfy the judgment, and the Third Circuit affirmed the denial. The Third Circuit opinion makes no reference to subject

matter jurisdiction. Rather, the Third Circuit opinion simply rejected the taxpayer's effort to force the government to abide by an unauthorized settlement agreement.

In *Jackson* the Third Circuit rejected the taxpayer's assertion that his tax debt had been settled by the IRS, noting that under § 7122(a) the IRS did not have the authority to do so. Unlike the facts at issue in *Jackson*, KYOCERA AVX is not seeking satisfaction of a tax judgement or otherwise asserting that the IRS has agreed to a settlement. And unlike this matter, in *Jackson* the government did not unilaterally reverse an abatement in an effort to defeat subject matter jurisdiction.

The Government also relies on *Waltner v. United States*, No. 20-16475, 2021 WL 4310800 (9th Cir. June 4, 2021). Like many unpublished opinions, *Waltner* provides only limited facts and analysis. It appears from the opinion that the taxpayers alleged certain penalties had been improperly assessed. Those penalties, however, had been litigated in Tax Court and, thus, the taxpayers' claims were barred by collateral estoppel. *See id.* at *1. The opinion does not indicate that the government sought to defeat subject matter jurisdiction by unilaterally reversing an abatement after a complaint was filed. And in addressing the applicability of § 7122, the opinion cites the same IRS Chief Counsel Notice cited by the Government in its Motion. As noted previously, IRS memos are policy statements, not legal authority. *See Schik*, 2022 U.S. Dist. LEXIS 41148, at *9.

The Government fails to cite a district court opinion that rejected the Government's argument that § 7122 applies to all abatements. Specifically, in *United States v. Pound*, 2010 U.S. Dist. LEXIS 82090 (E.D. Okla. Feb. 2, 2010), the court addressed the "government's argument that under 26 U.S.C. § 7122(a), only the Attorney General may authorize adjustments to the taxes covered by the judgment." The court rejected that argument, noting that § 7122(a) only addresses

compromises, not abatements. *See id*. at *9. The court then granted the defendant relief from judgment, holding that the IRS's previous abatement of his tax liability was valid despite the IRS's assertion that it was made in error. *See id*. at *11.

To summarize, the Government cites no binding legal authority to support its assertion that §7122 renders mistaken abatements void. And as set forth previously, the Fourth Circuit has held that the IRS cannot unilaterally reverse a mistaken abatement. Rather, the IRS must follow the statutory deficiency procedures, which it failed to do here. *See Singleton v. United States*, 128 F.3d 833, 838-39 (4th Cir. 1997). Accordingly, the Government's Motion to Dismiss must be denied.

III.    The IRS's attempt to increase KYOCERA AVX's tax assessment is an improper attempt to defeat this court's jurisdiction.

To the extent the IRS's attempt to unilaterally increase Kyocera AVX's tax assessment – months after the Amended Complaint was filed – is an attempt to defeat jurisdiction under the *Flora* "full payment" rule, the courts have long rejected similar attempts. The Court should reject any such attempt here.

For example, in cases involving diversity jurisdiction, after a defendant removes a case from state to federal court a plaintiff cannot defeat the federal court's jurisdiction by amending its complaint to claim an amount less than the required amount in controversy. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938); *Woods v. Marshak*, 2024 U.S. Dist. LEXIS 131617, *6 (D.S.C. July 25, 2024) (recognizing that reducing the claim below the required amount does not deprive the district court of jurisdiction). Allowing plaintiffs to do so would effectively defeat a defendant's statutory right to removal in diversity cases. *See* 28 U.S.C. § 1441(b).

Similarly, diversity of citizenship is determined based on the citizenship of the parties at the time the complaint is filed. Subsequent changes by the parties that result in the destruction of diversity do not undermine diversity jurisdiction so long as jurisdiction was proper at the time the action was filed. Efforts to manipulate the citizenship of the parties to create diversity by improperly naming parties are prohibited. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969); *Mayes v. Rapoport*, 198 F.3d 457 (4th Cir. 1999).

Under the mootness doctrine, an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 168 (2016). However, a defendant cannot escape a lawsuit by ceasing its offensive conduct if it is clear that the defendant has changed course simply to deprive the court of jurisdiction. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010). A court will not dismiss a case on mootness grounds where a defendant voluntarily stops an alleged illegal practice which the defendant is free to resume at any time. *See id.* at 1115.

Similarly, in this matter the Government should not be allowed to defeat jurisdiction by unilaterally increasing KYOCERA AVX's tax assessment after KYOCERA AVX filed its Amended Complaint.

## CONCLUSION

There is no dispute that when KYOCERA AVX filed its Amended Complaint it had fully paid its 2018 tax assessment. Thus, KYOCERA AVX has satisfied *Flora's* full-payment rule and the Government's Motion to Dismiss should be denied.

        Respectfully submitted,

        /s/ D. Gregory Placone
Calvin T. Vick, Jr., Fed. Bar No. 9502
D. Gregory Placone, Fed. Bar No. 11977
HUDSON LAMBERT PARROTT, LLC
201 W. McBee Avenue, Suite 450
Greenville, SC 29601
PH:     (864) 235-5535
FAX:  (864) 235-6866
tvick@hlpwlaw.com
gplacone@hlpwlaw.com

George B. Abney
*Admitted Pro Hac Vice*
GA Bar No. 121676; FL Bar No. 171557
Alston & Bird, LLP
1201 W. Peachtree Street
Atlanta, Georgia  30309-3424
PH:     (404) 881-7980
FAX    (404) 253-8380
george.abney@alston.com
***Attorneys for Plaintiff, KYOCERA AVX Components Corporation***

July 29, 2024
Greenville, South Carolina

15