IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| KYOCERA AVX COMPONENTS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C/A No. 6:22-cv-02440-TMC ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

**RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

KYOCERA AVX Components Corporation ("KYOCERA AVX"), by and through undersigned counsel, files its Response in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 77).

## INTRODUCTION

Since 1962 Section 78 has treated the deemed paid foreign tax credit as a "dividend received." Section 245A, allows a deduction for "any dividend received." The plain meaning of these statutes compels the conclusion that KYOCERA AVX's Section 78 "dividend received" qualifies for Section 245A's deduction for "any dividend received."

In its Motion the Government's spends most of its time attempting to overcome the plain meaning of these statutes. First, the Government argues that when Congress enacted Section 245A allowing a deduction for "any dividend received," it did not mean what it said. Rather, according to the Government, Congress only meant to allow a deduction for actual distributions made. That

1

argument fails because it is contradicted not only by the text of the relevant statutes, but also by the IRS regulations, legislative history, and court rulings.  As a second argument the Government asserts policy reasons for disallowing KYOCERA AVX's Section 245A deduction.  That argument fails because the Government's preferred tax policies cannot change the clear and unambiguous text of the Tax Code.  Third, the Government argues certain rules of statutory interpretation disallow the deduction.  But just like its policy argument, that argument fails because general rules of statutory interpretation cannot be relied on to change the text of the relevant statutes.  Fourth, the Government argues Section 275(a)(4) bars KYOCERA AVX's deduction.  But Section 275(a)(4) does not disallow deductions for "dividends received."  Rather, it only disallows deductions for foreign taxes paid.

In its Motion the Government also attempts to defend the Treasury Department's regulation which backdates New Section 78's effective date.  But the Government cites no authority that would allow Treasury to change a statutory effective date by regulation.  That is not surprising, because no such authority exists.  Because no such authority exists, the Government asks the court to "respect" the Treasury Department's "special expertise" in interpreting tax statutes.  While this matter certainly involves the interpretation of tax laws, Treasury has no special expertise in interpreting those laws.  As the Supreme Court recently held, it is the job of the courts, not federal agencies, to interpret statutes.  *See Loper Bright Enterprises v. Raimondo*, 603 U.S. __, 144 S. Ct. 2244, 2266 (June 28, 2024) ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."); *see also, Kisor v. Wilkie*, 588 U.S. 558, 578 (2019) (interpretive issues "fall more naturally into a judge's bailiwick").

As an alternative final argument, the Government asserts that even if KYOCERA AVX is entitled to claim a Section 245A deduction, Section 245A(d)(1) disallows some of its claimed tax credits.  But like its previous arguments, this alternative argument fails because it ignores the language

2

of the relevant statutes. Section 245A(d)(1) disallows a tax credit for foreign "taxes paid or accrued (or treated as paid or accrued) with respect any dividend for which a deduction is allowed" under Section 245A. Section 245A(d)(1), however, cannot disallow credits for foreign taxes paid with respect to Section 78 dividends because Section 78 dividends exist only under U.S. tax law and are not taxed under foreign law.

For these reasons, as well as the additional reasons stated herein, the Court should deny the Government's Motion, and grant partial summary judgment holding that that (1) the plain and unambiguous statutory text of the TCJA entitles KYOCERA AVX to claim a dividends received deduction under Section 245A for its Section 78 dividends, and (2) the Treasury Regulation seeking to change the effective date of New Section 78 is invalid.

## ANALYSIS

The Government's Motion should be denied because: (I) Section 245A allows a deduction for Section 78 dividends; (II) Treasury's Regulation seeking to backdate New Section 78's effective date is invalid; and (III) KYOCERA AVX properly calculated its Section 965 inclusion.

**I.      Section 245A allows a deduction for Section 78 dividends.**

In its Motion the Government asserts multiple arguments in support of its claim that KYOCERA AVX cannot claim a Section 245A deduction for its Section 78 dividends. None of the Government's arguments are persuasive. And contrary to those arguments: (a) the Section 245A deduction is not limited to actual distributions; (b) policy reasons do not prohibit the deduction; (c) certain statutory interpretation rules do not prohibit the deduction; and (d) Section 275(a)(4) does not prohibit the deduction.

   a.      <u>The Section 245A deduction is not limited to actual distributions</u>.

The Government claims that the word "distributions" in Section 245A's effective date provision limits the dividends received deduction – *for all time* – to actual distributions, as opposed to a dividend received or deemed received. In support of its argument the government asserts that a "dividend" is different from a "distribution." While that is literally true for purposes of the taxation of corporations and their shareholders, a dividend is ***always*** a distribution.[1] And the Government ignores the actual language of Old Section 78 and Section 245A. Old Section 78 treats deemed-paid foreign taxes as a ***"dividend received."*** Section 245A allows a deduction for any ***"dividend received."*** 26 U.S.C. 245A(a). The statutes use precisely the same language – "dividend received" – and Section 245A allows a deduction for "any" dividend received. By using the term "any," Congress made clear that Section 245A applies to all dividends received, not some limited subset of dividends received. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("any" means "one or some indiscriminately of whatever kind"). "[A]ny dividend received" includes a deemed dividend received. And a deemed dividend received by the shareholder arises from a deemed distribution made by the corporation.[2]

The Section 78 dividend is a deemed dividend received by the U.S. shareholder that is treated as a distribution "from the foreign corporation." *See Champion Int'l Corp. v. Commissioner*, 81 T.C. 424, 427 (1983) ("The effect [Section 78's dividend received] is to treat the domestic corporation as though it had received a distribution out of the foreign corporation's before-tax profits…."). It arises by operation of law. Congress mandated its existence in Old Section 78 by using the words "treated

---

[1] *See* 26 U.S.C. § 316(a) (defining the term "dividend" as "any distribution of property made by a corporation to its shareholders" out of earnings and profits).

[2] *See, e.g., Welle v. Commissioner*, 140 T.C. 420, 423 (2013) ("Where a corporation constructively distributes property to a shareholder, the constructive dividend received by the shareholder is ordinarily measured by the fair market value of the benefit conferred.") (emphasis added); *see also Sturgeon v. Frost*, 587 U.S. 28, 47 (2019) (the word "deemed" is "used in legal materials to treat (something) as if … it were really something else") (citation omitted).

… as," which mean "deemed." *See Fluor Corp. v. United States*, 126 F.3d 1397, 1401 (Fed. Cir. 1997) ("The ordinary meaning of the word 'deemed' in the legal context is 'considered' or 'treated as if.'") (citation omitted). And Congress defined the broad scope of "dividend received" treatment in Old Section 78.[3] The sole exception to that treatment is section 245 (not section 245A). Indeed, in New Section 78, Congress carved section 245A out of New Section 78's scope for years beginning after 2017. This explicit exception shows that Congress knew that a Section 78 dividend was otherwise eligible for the Section 245A dividends received deduction. It also undercuts the Government's contention that Congress intended to create an exception for the Section 245A deduction in the effective-date provision for that statute, which uses the word "distribution" because, obviously, that is what the whole of Section 245A is about: a distribution from a controlled foreign corporation, with a "dividend received" by the controlled foreign corporation's shareholder.[4]

For decades, the Government's own regulations have equated a deemed "dividend received" with a deemed "distribution" in the context of a Section 78 dividend. Regulations under Old Section 78, originally promulgated in 1965 (T.D. 6805, 30 Fed. Reg. 3208) and applicable for KYOCERA AVX's FY18 taxable year, provide that a Section 78 Dividend "shall be treated as a *distribution* received by such domestic corporation on the last day in such taxable year on which such first-tier corporation is a controlled foreign corporation." Treas. Reg. § 1.78-1(e)(2) (2018) (prior to amendment by T.D. 9866, 84 Fed. Reg. 29288 (June 21, 2019)) (emphasis added). On the basis of this regulation, and for nearly

---

[3] Old Section 78 expansively treated the Section 78 Dividend as a "dividend received" "for purposes of this title (other than section 245)." "For purposes of this title" means "the entire Internal Revenue Code," and it would be "thoroughly unsound" to "attempt to limit" that language. *See Steel Balls, Inc. v. Commissioner*, T.C. Memo. 1995-266 at *13.

[4] Moreover, the meaning of an isolated word (like "distributions") must be determined from the context of the statute as a whole (which allows a deduction for "any dividend received"). *See Deal v. United States*, 508 U.S. 129, 132 (1993).

60 years, the IRS treated a Section 78 Dividend as a "distribution." Now the Government seeks to disavow that treatment and asserts that a Section 78 dividend is not a "distribution."

The legislative history to Section 245A also confirms that the term "dividend received" is construed broadly for purposes of applying the deduction. *See, e.g.*, H.R. Rep. No. 115-409 at 371 (2017) ("The term 'dividend received' is intended to be interpreted broadly[.]"); H.R. Rep. No. 115-466 at 595 (2017) (same). In addition, Courts have recognized the relationship between a deemed "dividend received" and a deemed "distribution" under section 78. *See Champion*, 81 T.C. at 427 ("The effect [of section 78] is to treat the domestic corporation as though it had received a distribution out of the foreign corporation's before-tax profits").[5]

In sum, the statutory text, Treasury regulations, legislative history, and court rulings confirm that a deemed dividend received is the same, in all relevant respects, as a deemed distribution. Accordingly, section 245A's deduction for "any dividend received" applies to the deemed "dividend received" under Old Section 78.

b.    <u>Policy reasons do not prohibit the deduction</u>.

The Government asserts that prohibiting KYOCERA AVX from claiming a 245A deduction "is consistent with the [Congressional] objective of encouraging the repatriation of earnings to the benefit of the United States and its citizens." Govt. Br. p. 19-20. KYOCERA AVX agrees that one of the goals of the TCJA was to encourage the repatriation of income. KYOCERA AVX does not

---

[5] The ordinary, common meaning of the terms "dividend received" and "distribution" shows their overlap, as a "distribution" involves a transfer from a corporation to a shareholder, and a "dividend received" involves a receipt by the shareholder from a corporation. *See, e.g., Lynch v. Hornby*, 247 U.S. 339, 341 (1918) ("distribution … was a … dividend received"); *Mayer v. Donnelly*, 247 F.2d 322, 326 (5th Cir. 1957) ("dividend … distributed" by corporation was "dividend received by the taxpayers").

6

agree, however, that disallowing its Section 245A deduction would further that goal. Pursuant to Section 965, KYOCERA AVX has reported over $1 billion of previously unreported foreign earnings. *See* ECF No. 76-2, p. 9 (amended return). Thus, KYOCERA AVX has fully repatriated its deferred foreign earnings, in the manner specified by Congress. Allowing KYOCERA AVX and other similarly situated taxpayers to claim a Section 245A deduction does not change the fact that their deferred foreign income has been fully repatriated. Accordingly, allowing, or disallowing, the Section 245A deduction will have no impact on the repatriation goal.

The government also argues that allowing KYOCERA AVX to claim a Section 245A deduction amounts to a "special tax break [for] fiscal year taxpayers as compared to calendar-year taxpayers." But the natural consequence of any statutory effective date is that the statute will impact some taxpayers, but not others. *See Garland v. Cargill*, 602 U.S. 406, 427 (2024) ("A law is not useless merely because it draws a line more narrowly than one of its conceivable statutory purposes might suggest."); *Bullen v. Wisconsin*, 240 U.S. 625 (1916) ("We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits.").

But even if allowing the Section 245A deduction here would thwart Congressional policy, neither the goal of returning cash to the United States nor the concern about providing a benefit to only some taxpayers allows the Government to override plain statutory text. *See Gitlitz v. Commissioner*, 531 U.S. 206, 219-20 (2001) ("Because the Code's plain text permits the taxpayers here to receive these ['double windfall'] benefits, [the Court] need not address this policy concern.").[6] The Supreme

---

[6] *See also, Hall v. United States*, 566 U.S. 506, 523 (2012) ("[T]here may be compelling policy reasons for treating post-petition income tax liabilities as dischargeable. But if Congress intended that result, it did not so provide in the statute. Given the statute's plain language, context, and structure, it is not

Court has reiterated time and again that purpose cannot trump text, as "the text of a law controls over purported legislative intentions unmoored from any statutory text." *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). And a court "will not alter the [statutory] text in order to satisfy the policy preferences of the Commissioner [of Internal Revenue]." *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002). See also (Previous briefs).

    c. <u>Statutory interpretation rules do not prohibit the deduction.</u>

The Government's reliance on the "presumption against ineffectiveness" is misplaced. That presumption weighs against an interpretation that would render a statute useless. *See Garland v. Cargill*, 602 U.S. at 427. Allowing fiscal year taxpayers to claim a Section 245A deduction for their Section 78 dividends hardly renders the TCJA useless. Rather, it merely allows a limited number of taxpayers to claim a deduction that the government opposes. *See id*. (rejecting the argument that the presumption against ineffectiveness required applying machinegun restrictions to bump stocks).

The Government's reliance on the presumption against implied tax exemptions is also misplaced. In support of its position, the Government cites *United States v. Wells Fargo Bank*, 485 U.S. 351 (1984), for the proposition that tax exemptions must be proven, not implied. That case is instructive. In *Wells Fargo*, the taxpayer sought to prove an exemption by citing "various indicia of

---

for us to rewrite the statute . . . ."); *Hanover Bank v. Comm'r*, 369 U.S. 672, 687 (1962) ("The statute in issue here, in plain and ordinary language, evidences a clear congressional intent to allow amortization with reference to any call date named in the indenture. Under such circumstances we are not at liberty, notwithstanding the apparent tax-saving windfall bestowed upon taxpayers, to add to or alter the words employed to effect a purpose which does not appear on the face of the statute."); *United States v. Calamaro*, 354 U.S. 351, 357 (1957) ("Neither we nor the Commissioner may rewrite the statute simply because we may feel that the scheme it creates could be improved upon."); *Iselin v. United States*, 270 U.S. 245, 251 (1926) ("What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.").

8

alleged legislative intent." *See id.* at 356. The Supreme Court rejected the taxpayer's argument because the language of the relevant tax statutes confirmed the exemption did not apply. *See id.* at 355 (noting that "by their terms" multiple sections of the Tax Code "which defined the taxable estate for estate tax calculation" confirmed that certain notes were includable in the taxable estate).

*Wells Fargo* actually supports KYOCERA AVX's position that it is entitled to claim a Section 245A deduction. In *Wells Fargo* the language of the relevant statutes prevailed over legislative history and policy arguments. Likewise, the plain meaning of the relevant statutes at issue here compels the conclusion that KYOCERA AVX's Section 78 "dividend received" qualifies for Section 245A's deduction for "any dividend received." The Government makes essentially the same argument made unsuccessfully by the taxpayer in *Wells Fargo* – relying almost exclusively on its view of tax policy and Congressional intent to support its proposed denial of KYOCERA AVX's Section 245A deduction. Those arguments were not persuasive in *Wells Fargo* and they are not persuasive here.

The Government also asserts that New Section 78's effective date is somehow less important than other statutory provisions because it was enacted via a "conforming amendment." Gov. Br. p. 23-24. First, Section 78's effective date was not part of a conforming amendment. TCJA Section 14301(c) is captioned, "Conforming Amendments" and includes subsections (1) through (39). *See* 131 Stat. 2054, 2222. TCJA Section 14301(d) contains the effective date provision for New Section 78 and is listed separately from the conforming amendments. *See id.* Second, it does not matter whether Section 78's effective date was called a "conforming amendment" or not because statutory provisions are binding regardless of any label that might be affixed, and confirming amendments are not subject to any special interpretive rules. *See United States v. R. L. C.*, 503 U.S. 291, 305 n.5 (1992) ("[A] statute is a statute, whatever its label.").

    d. <u>Section 275(a)(4) does not prohibit the deduction</u>.

9

The Government erroneously argues that KYOCERA AVX, in violation of Section 275(a)(4), is simultaneously claiming both a deduction and a credit for foreign taxes paid. Section 275(a)(4) provides that no deduction shall be allowed for '[i]ncome …taxes imposed by the authority of any foreign country … if the taxpayer chooses to take to any extent the benefits of section 901 [relating to the foreign tax credit]."[7]

KYOCERA AVX has not claimed a deduction for foreign taxes paid and, accordingly, this argument is irrelevant. The Section 245A dividends received deduction is not a deduction for foreign taxes paid because it does not involve a payment of any kind to a foreign government or to anyone else. A U.S. corporation can pay foreign taxes directly, like those paid by a foreign branch of the U.S. corporation. A U.S. corporation can also pay foreign taxes indirectly, like those it is deemed to have paid but were actually paid by its controlled foreign corporation.[8] But the Section 245A dividends received deduction is not a deduction for the direct or indirect payment of foreign taxes. Rather, it is a deduction created by the Section 245A of the Tax Code and is taken against a "dividend received," in this case a dividend received arising under Section 78. Because it is a deduction for a statutorily designated item of income (a dividend received), it is not a deduction for foreign taxes. As Old Section 78 provides, the amount of the Section 78 dividend is a dividend for all purposes of the Code, including for purposes of Section 275(a)(4). Consequently, in no way has KYOCERA AVX taken a deduction for foreign taxes.

---

[7] Section 275(a)(4) refers to the Section 164(a)(3) deduction for "State and local, and foreign, income, war profits, and excess profits taxes."

[8] When a U.S. corporation pays foreign taxes directly it can claim a foreign tax credit under Section 901. When a U.S. corporation pays foreign taxes indirectly it can claim a tax credit under Section 902 (prior to appeal) or Section 960.

In its brief, however, the Government attempts a sleight of hand by telling the court that "deduction for foreign taxes" means something other than the Section 164(a)(3) deduction. There is no authority anywhere in the Tax Code for the proposition that Section 275(a)(4) means anything other than to give taxpayers a choice (the section actually uses the word "chooses") between claiming a foreign tax credit and claiming a deduction for the same taxes. *See Trusted Media Brands, Inc. v. United States*, 899 F.3d 175 (2d Cir. 2018). To suggest that a Section 78 dividend, deducted pursuant to Section 245A, is a deduction for foreign taxes paid is misleading.

**II.     Treasury's regulation seeking to backdate New Section 78's effective date is invalid.**

The Government asserts its backdating regulation should be upheld because "Treasury has special expertise to *interpret* tax laws." Gov. Br. 29. The Government is correct that this matter involves the interpretation of tax laws. But the Government is incorrect in asserting Treasury has special expertise in interpreting those laws. As the Supreme Court recently held, it is the job of the courts, not federal agencies, to interpret statutes. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. __, 144 S. Ct. 2244, 2266 (June 28, 2024) ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."); *see also*, *Kisor v. Wilkie*, 588 U.S. 558, 578 (2019) (interpretive issues "fall more naturally into a judge's bailiwick").

The Government also asserts its backdating regulation is entitled to "respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Skidmore* teaches that agency guidance may have "weight" depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Id*. at 140. The *Skidmore* factors confirm Treasury's Regulation is not entitled to any special respect. As noted in KYOCERA AVX's Motion for Partial Summary Judgment, Treasury received multiple comments to its proposed regulation pointing out that

11

it lacked the authority to backdate New Section 78's effective date.  *See* ECF No. 76, pp. 17-21. Treasury failed to offer a reasoned response to those comments and instead simply offered its policy-based justifications.  Those policy reasons cannot overcome the plain meaning of New Section 78's effective date.  And Treasury's Regulation, which failed to adequately address those comments and failed to offer adequate reasons for its backdating, could not be described as thorough, consistent, or persuasive.

Furthermore, the statute at issue (section 245A) first entered the Code in the 2017 TCJA. The IRS had not administered this statutory scheme for any significant length of time before Treasury issued its regulation.  The IRS had no prior experience with section 245A, so it did not and could not leverage any amount of supposed "expertise" in administering the Section 245A deduction. In addition, the interpretive question here does not "rest[] on factual premises within [the agency's] expertise."  *See Loper Bright Enterprises v. Raimondo*, 603 U.S. __, 144 S. Ct. 2244, 2267 (June 28, 2024). The question here is purely legal and does not require any detailed factual analysis. Because the Government does not have any specialized expertise on the purely legal question of statutory interpretation at issue here, its position is not entitled to *Skidmore* respect.

Finally, the Treasury Regulation violated the fundamental principle that an agency cannot "add[] to the statute … something which is not there." *See United States v. Calamaro*, 354 U.S. 351, 359 (1957); *see also*, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (agency interpretation that was "flatly inconsistent with the [statute]" was "unpersuasive"); *BMC Software, Inc. v. Commissioner*, 780 F.3d 669, 675-76 (5th Cir. 2015) (no *Skidmore* weight for IRS interpretation that "runs counter to plain language" of the statute).

**III.     KYOCRA AVX properly calculated is Section 965 Inclusion.**

In its final and alternative argument, the Government asserts that KYOCERA AVX did not calculate its Section 965 transition tax liability correctly because it did not follow the requirements of Section 245A(d)(1).  That section provides:

> No credit shall be allowed under section 901 for any taxes paid or accrued (or treated as paid or accrued) with respect to any dividend for which a deduction is allowed under this section.

For Section 245A(d)(1) to apply, a foreign country must impose foreign taxes on the dividend. That is, there must be taxes paid, or deemed paid, "with respect to a dividend."  As noted previously, the Section 78 dividend is not an actual payment and it is not subject to foreign taxes in any way, shape, or form.  The Section 78 dividend was created by statute and it only affects the U.S. tax treatment of U.S. shareholders.  It is not a dividend for foreign tax purposes.  The foreign countries in which KYOCERA AVX and its subsidiaries do business are indifferent to Section 78 and they certainly do not impose a tax on Section 78 dividends.

Section 245A(d)(1) is designed to apply to a cash dividend where a foreign country imposes withholding tax or otherwise taxes that dividend.  For example, assume a foreign corporation distributes a $100 dividend, to which the Section 245A dividends received deduction would otherwise apply, and the foreign country imposes a withholding tax of $20 (20%).  In that scenario, the U.S. shareholder has dividend income of $100 and $20 of foreign tax.  If the U.S. shareholder takes the dividend received deduction of $100 against that dividend, it would have net taxable income of zero. Section 245A(d)(1) prevents the $20 of foreign tax being credited against U.S. tax on other income of the U.S. shareholder.  That is the double benefit that Congress sought to prevent.  That double benefit

did not, and could not, happen here where there is no foreign tax at all imposed on the Section 78 dividend.[9]

In an attempt to salvage at least a partially favorable result, the Government has concocted a formula to infer that a portion of the foreign taxes incurred by KYOCERA AVX's foreign subsidiaries are "with respect" to the Section 78 dividend. First, this theory is based on *American Chicle Co v. United States*, 316 U.S. 450 (1942), which construed the foreign tax regime in place under the Revenue Acts of 1936 and 1938. See Pub. L. No. 74-740, 49 Stat. 1648, 1696 (1936); Pub. L. No. 75-285, 52 Stat. 447, 506 (1938).[10] That tax regime was completely replaced by the regime set forth in the 1954 Tax Code, which included Sections 902 and 960. Then, in 1962, Congress amended the formula rules of Section 902 and added Section 78. *See United States v. Goodyear Tire & Rubber Co.*, 493 U.S. 132, 141 n.6 (1989) ("The 1962 amendment addressed the [*American Chicle*] problem differently . . . ."). Now, even Section 902 has been repealed by the TCJA. *See* TCJA § 14301(a); 131 Stat. 2221. The methodology for attributing deemed paid taxes to KYOCERA AVX pursuant to the transition tax is carefully laid out in Sections 965 and 960, with extensive regulations promulgated under each section. KYOCERA AVX complied with those rules. The Government cannot revive a now obsolete formula, written nearly 80 years ago under a different tax regime, in a "Hail Mary" attempt to salvage a partially favorable result.

---

[9] To be sure, KYOCERA AVX's Section 965 inclusion gave rise to foreign tax credits which it claimed. Those foreign tax credits were calculated in a manner similar to the calculation of the Section 78 dividend. But the Section 78 dividend does not represent income for foreign tax purposes and, thus, was not subject to foreign tax.

[10] That case construed the words "upon or with respect to… accumulated profits" and said nothing about dividends. Indeed, dividends arising under the Section 78 gross-up did not exist at that time.

14

**CONCLUSION**

There is not dispute that since 1962 Section 78 has treated the deemed paid foreign tax credit as a "dividend received." There is also no dispute that Section 245A, allows a deduction for "any dividend received." The plain meaning of these statutes compels the conclusion that KYOCERA AVX's Section 78 "dividend received" qualifies for Section 245A's deduction for "any dividend received." None of the Government's arguments seeking to overcome the plain meaning of Sections 78 and 245A are persuasive. And Treasury's regulation seeking to backdate the effective date of New Section 78 is invalid. Lastly, KYOCERA AVX properly calculated its Section 965 inclusion. Accordingly, the Government's Motion for Summary Judgment should be denied.

Dated: August 23, 2024

Respectfully submitted,

/s/D. Gregory Placone
Calvin T. Vick, Jr., Fed. Bar No. 9502
D. Gregory Placone, Fed. Bar No. 11977
HUDSON LAMBERT PARROTT, LLC
201 W. McBee Avenue, Suite 450
Greenville, South Carolina 29601
PH:   (864) 235-5535
FAX: (864) 235-6866
tvick@hlpwlaw.com
gplacone@hlpwlaw.com

George B. Abney
*Admitted Pro Hac Vice*
GA Bar No. 121676; FL Bar No. 171557
Alston & Bird, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309-3424
Direct:    404-881-7980
Fax:       404-253-8380
george.abney@alston.com

*Attorneys for Plaintiff, KYOCERA AVX Components Corporation*