# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

|  |  |  |
|---|---|---|
| KYOCERA AVX COMPONENTS CORPORATION, | ) ) | Civil Action No. 6:22-cv-02440-TMC |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |
| _____ | ) |  |

## UNITED STATES' RESPONSE TO KYOCERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Introduction ............................................................................................................. 1

I   Section 245A requires a distribution, and the section 78 gross-up is not a distribution ...................................................................................................... 2

II  A plain reading of section 245A demonstrates that Kyocera may not claim a deduction for its section 78 gross-up ......................................................... 12

III The Court should adopt Treasury's contemporaneous interpretation as set forth in Treas. Reg. § 1.78-1 ....................................................................... 18

Conclusion ............................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Air Transport Ass'n of America, Inc. v. National Mediation Bd.*, 719 F. Supp. 2d 26 (D.D.C. 2010) ......................................................................... 21

*Baldwin v. United States*, 921 F.3d 836 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 690 (2020) .................................................................................................. 23

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204 (1988) ............................ 22, 23

*City of Tucson v. Comm'r*, 820 F.2d 1283 (D.C. Cir. 1987) ............................ 13

*Comm'r v. Gordon*, 391 U.S. 83 (1968) ................................................... 7, 8, 9

*Covad Commc'ns Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006) ........................... 21

*C & W Fish Co., Inc. v. Fox*, 931 F.2d 1556 (D.C. Cir. 1991) ......................... 20

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) .................. 17

*INDOPCO, Inc. v. Comm'r*, 503 U.S. 79 (1992) .............................................. 14

*Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137 (11th Cir. 1989) .............. 21

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ...................................... 14

*Lilly v. United States*, 238 F.2d 584 (4th Cir. 1956) ...................................... 13

*Loper Bright Enter's v. Raimondo*, 603 U.S. __, 144 S. Ct 2244 (2024) ............ 12, 18, 19

*Me. Med. Ctr. v. United States*, 675 F.3d 110 (1st Cir. 2012) .......................... 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ... 20, 22

*New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934) ................................. 14

*North Carolina v. FAA*, 957 F.2d 1125 (4th Cir. 1992) ............................... 20, 22

*Ohio v. EPA*, 603 U.S. ___, 144 S. Ct. 2040 (June 27, 2024) ........................... 20

*Officemax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005) ........................ 13

*POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102* (2014) ........................... 14

*Rapanos v. United States*, 547 U.S. 715 (2006) .............................................. 17

*Rodriguez v. Comm'r*, 137 T.C. 174 (2011), *aff'd*, 722 F.3d 306 (5th Cir. 2013) .............. 8

**Cases (cont'd)**

*Stewart Foods, Inc., In. re*, 64 F.3d 141 (4th Cir. 1995) ................................ 10

*United States v. American Trucking Ass'ns*, 310 U.S. 534 (1940) ................................ 12

*United States v. Davis*, 397 U.S. 301 (1970) ................................ 7, 9

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................ 20

*United States v. Merriam*, 263 U.S. 179 (1923) ................................ 13

*W. Coal Traffic League v. Surface Transp. Bd.*, 998 F.3d 945 (D.C. Cir. 2021) ................................ 20

**Statutes**

Administrative Procedure Act (5 U.S.C.):

 § 553 ................................ 19

 § 706 ................................ 20

Internal Revenue Code of 1986 (26 U.S.C.):

 § 78 ................................ passim

 § 245A ................................ passim

 § 301 ................................ 5, 6, 7, 10, 11

 § 316 ................................ 4, 10

 § 317 ................................ 8

 § 367 ................................ 11

 § 1248 ................................ 10

 § 7805 ................................ 18, 21, 22, 23

Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (Dec. 22, 2017):

 § 14101 ................................ 1, 2, 3, 15, 22

 § 14103 ................................ 1

 § 14301 ................................ 2, 15, 22

**Regulations**

83 Fed. Reg. 63200 (Dec. 7, 2018) ................................ 16, 19, 23

Treasury Regulations (26 C.F.R.):

 § 1.78-1 ................................ 9, 10, 11

 § 1.301-1 ................................ 11

 § 1.316-2 ................................ 9, 10

 § 1.367(b)-2 ................................ 11

T.D. 6805, 30 Fed. Reg. 3208 (1965) ................................ 9

T.D. 9866, 84 Fed. Reg. 29288 (Jun. 21, 2019) ................................ 9, 18, 21, 23

**Miscellaneous**

Bittker & Eustice, *Fed. Income Tax'n of Corps. & Shareholders* (2024) ................................ 4, 5, 6

Bittker & Lokken, *Fed. Tax'n of Income, Estates & Gifts* (2024) ................................ 6

H.R. Rep. No. 115-409 (2017) ................................ 18

H.R. Rep. No. 115-466 (2017) (Conf. Rep.) ................................ 18

Rev. Rul. 90-31, 1990-1 C.B. 147 ................................ 10

## INTRODUCTION

Kyocera AVX contends that it is entitled to a $143 million dividends-received deduction under Internal Revenue Code section 245A for its fiscal tax year beginning April 1, 2017, and ending March 31, 2018, unlike a similarly situated taxpayer with a tax year beginning January 1 and ending December 31. Its position is contrary to the text of the statutes, the operative Treasury Regulation, and common sense.

As we described in our motion for summary judgment, section 245A was enacted as part of the 2017 Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 14101(a), 131 Stat. 2054, 2189 (2017). *See generally* ECF 77 p. 1-10. TCJA also included a transition tax, and Kyocera acknowledges that its controlled foreign corporations had $1 billion of previously untaxed deferred foreign earnings that are subject to the transition tax. I.R.C. § 965; *see also* TCJA § 14103(a), 131 Stat. at 2195. When Kyocera computed its transition tax, it claimed a foreign tax credit for foreign taxes paid by those controlled foreign corporations with respect to those deferred earnings. As a result, to account for the math "quirk" described in our opening brief (ECF 77, p. 3-5), Kyocera must "gross up" its income by the amount of foreign taxes paid by its CFCs. I.R.C. § 78. Kyocera contends that, because a section 78 gross-up is "deemed" to be a dividend (which is the mechanism by which the section 78 gross-up is included in Kyocera's income), it is necessarily a "distribution" that qualifies for an dividends-received deduction under section 245A. But Kyocera is wrong. A dividend and a distribution are not the same, and

the plain language of TCJA shows that only distributions qualify for the section 245A deduction. The Court should deny Kyocera's motion for summary judgment.[1]

*I*

**Section 245A requires a distribution,
and the section 78 gross-up is not a distribution**

Kyocera claims a $143 million dividends-received deduction under section 245A, but it focuses its "plain meaning" argument on "new" section 78 and its effective date in TCJA § 14301(d), 131 Stat. at 2225. The key Internal Revenue Code provision is the one that creates Kyocera's claimed deduction, section 245A, which has an effective date in TCJA § 14101(f), 131 Stat. at 2192. Section 245A(a) allows "as a deduction an amount equal to the foreign-source portion of such dividend." Section 245A(c), in turn, defines what is meant by the "foreign-source portion": "The foreign-source portion of any dividend … is an amount which bears the same ratio to such dividend as (A) undistributed foreign earnings [of the CFC], bears to (B) the total undistributed earnings of such foreign corporation." And undistributed earnings are defined as earnings and profits for the year "*in which the dividend is distributed*." I.R.C. § 245A(c)(2)(A) (emphasis added). In other words, when Congress created the section 245A dividends-received deduction, it conditioned eligibility on distributions of foreign earnings. As we

---

[1] The United States, in its motion, also argued that Kyocera could not both elect to claim a foreign tax credit and take a deduction for the same foreign tax to which the credit relates. (ECF 77 at 24-26.) In addition, the United States contends in the alternative that even if Kyocera were to prevail on the question whether it is entitled to a section 245A deduction, the amount of its foreign tax credit must be reduced by section 245A(d) "with respect to any dividend for which a deduction is allowed under [section 245A]." (*Id.* at 31-34.) Kyocera's cross-motion does not address those two points, and the United States will address in its reply brief any arguments that Kyocera might make in response.

have described, the section 78 gross-up is a mathematical adjustment, not an actual or deemed distribution of earnings. It is a "deemed" dividend that is required to be taken into income to prevent both a credit and a deduction for the same foreign taxes paid by a foreign subsidiary. The section 78 gross-up is not a distribution received from a foreign corporation that was paid out of its undistributed foreign earnings, nor has there been any distribution in the sense that any corporate property has moved from the corporation and become the property of the shareholder.

The Tax Cuts and Jobs Act effective date for section 245A, like section 245A itself, also speaks in terms of distributions: "The amendments made by this section shall apply to *distributions* made after (and, in the case of the amendments made by subsection (d), deductions with respect to taxable years ending after) December 31, 2017." TCJA § 14101(f), 131 Stat. at 2192 (emphasis added). Thus, Congress intended that, to qualify for the deduction, the taxpayer must receive a distribution. The section 78 gross-up in this case can never qualify because it does not entail a "distribution" of any earnings and profits from Kyocera's foreign corporations.

Even though the mathematical adjustment that is a section 78 gross-up is considered under the tax laws to be a "deemed" dividend, the gross-up does not qualify for the section 245A dividends-received deduction. Likewise, the amount of a dividend eligible for a section 245A deduction is determined based on the amount of a foreign corporation's "undistributed foreign earnings," *see* I.R.C. § 245A(a) and (c).

The section 78 gross-up is not a distribution, nor is it paid out of undistributed foreign earnings. In its motion for summary judgment, Kyocera fails to address this

crucial element of section 245A. Instead, in its cursory footnote 7, Kyocera simply assumes a distribution to have taken place. (ECF 76, p. 11 n.7 ("the word 'dividend' as defined in the Code presumes that a 'distribution' has been received").) But as we argue in our motion for summary judgment, a section 78 gross-up, also known as a deemed section 78 dividend, is not a distribution of foreign earnings that is eligible for a section 245A dividends-received deduction.

To begin, section 316 of the Code defines a distribution that is "made by a corporation to its shareholders … out of its earnings and profits" to be a dividend.[2] The tax code recognizes that a corporate distribution does not enlarge the net worth of a shareholder, but "merely transfers value from corporate solution into direct shareholder possession." Bittker & Eustice, *Fed. Income Tax'n of Corps. & Shareholders*, ¶ 8.02 (2024). A corporation's "earnings and profits" is a tax measurement of retained earnings,

---

[2] I.R.C. § 316(a) provides:

(a) General rule. For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

"a measurement of profit that is not tied to any particular assets of the distributing corporation." *Id*. at ¶ 8.03[1].

But in some circumstances the tax code separately "deems" a dividend to have taken place even where there has not been a distribution of earnings and profits. The section 78 gross-up is one of those situations. Section 78, as in effect at the relevant period in this case (referred to by Kyocera as "Old Section 78," *see* ECF 76, p.8), provides that if a taxpayer elects to take a foreign tax credit for a foreign tax paid by its controlled foreign corporation, "an amount equal to the taxes deemed to be paid by [the CFC] under section 902(a) … or under section 960(a)(1) … *shall be treated* for purposes of this title (other than section 245) as a dividend received by such domestic corporation from the foreign corporation." (Emphasis added.) In other words, the section 78 gross-up is not an actual dividend, because there has been no distribution from earnings and profits. But the section 78 gross-up is required to be taken into income for the reasons described in our opening brief, and the mechanism Congress chose for that inclusion is to *deem* the gross-up to be a dividend.

Dividends and distributions are not equivalent. Distributions, too, are an important concept in corporate taxation. As a general matter, a corporation may transfer money or property to anyone it wishes, be it a shareholder or an unrelated party. But a payment or the transfer of property is only a "distribution" if the transfer of cash or property is made to a shareholder "with respect to its stock," *i.e.*, a payment made because of that person's role as a shareholder. I.R.C. § 301(a) ("Except as otherwise provided in this chapter, a

distribution of property … made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).").

The Internal Revenue Code sets forth tax consequences for when a corporation makes a distribution of property to its shareholders. *See generally* Bittker & Eustice, *Fed. Income Tax'n of Corps. & Shareholders*, at ¶ 8.02 ("Sections 301(a), 301(c), and 316 provide a framework for taxation of corporate distributions of property.") In general, the tax code has adopted a three-tier approach for corporate distributions, *i.e.*, those made "with respect to its stock." I.R.C. § 301(a). Non-liquidating distributions are generally taxed (1) as dividends, (2) a return of capital, or (3) as a capital gain. First, to the extent that the corporation has "earnings and profits," the distribution of those earnings is typically ordinary income to a shareholder, so it is treated as a taxable dividend to a shareholder. I.R.C. § 301(c)(1). That is, "once the corporation has realized profits, distributions may be fairly regarded as income to the stockholders." Bittker & Lokken, *Fed. Tax'n of Income, Estates, and Gifts*, ¶ 92.2. Second, to the extent a distribution exceeds the corporation's earnings and profits, it is a return of the shareholder's investment in the corporation, and the shareholder does not include it in gross income but instead reduces its adjusted basis in the corporate stock by the amount of the distribution that is not the dividend (*i.e.* the "return of capital"). I.R.C. § 301(c)(2). Third, once earnings and profits are exhausted and adjusted basis is reduced to zero, the remainder of

any distribution above those amounts is taxed to the shareholder as a gain, *i.e.*, the same tax treatment as if the shareholder had sold the stock. I.R.C. § 301(c)(3).

Under these rules, the same distribution can be treated in part as a dividend, in part as a return of capital, and in part as a capital gain. Consider an example where a controlled foreign corporation ("CFC1") distributes $500 to its parent shareholder ("Parent"). Assume Parent owns 100 percent of the shares of CFC1. Parent has a current basis of $250 in its CFC1 stock. CFC1 over time had grown in value. For U.S. tax purposes, assume that CFC1 has "earnings and profits" of $75. The three tiers of section 301 govern the tax consequences of that $500 corporate distribution. Since CFC1's $500 payment to Parent is not the payment for something like compensation for services or for rent, but instead, a payment to Parent "with respect" to its stock, it is a "distribution" for tax purposes. I.R.C. § 301(a). The first $75 of the $500 distribution would be a dividend to the shareholder because CFC1 has that amount of "earnings and profits." I.R.C. § 301(c)(1). The next $250 of the distribution is tax-free because it is considered a return of capital to Parent, whose tax basis in the CFC1 stock is consequently reduced to zero. I.R.C. § 301(c)(2)). The remaining $175 of the distribution is taxed as a capital gain because it is treated as the sale of property. I.R.C. § 301(c)(3).

As the Supreme Court has observed, "[i]f a corporation distributes property as a simple dividend, the effect is to transfer the property from the company to its shareholders without a change in the relative economic interests or rights of the stockholders." *United States v. Davis*, 397 U.S. 301, 313 (1970). *See also Comm'r v. Gordon*, 391 U.S. 83, 89-90 & n.5 (1968) (explaining that sale of corporate property to

stockholders at less than fair market value constitutes a transfer of wealth to the shareholder and thus is a distribution of property under § 316). All three tiers of distributions described in section 301 involve a transfer of property from the corporation to the shareholder. Or, to put it in terms of the example given on the previous page, before the distribution, the corporation owned $500 in cash, and after the distribution, it did not (but the shareholder did).[3]

The Tax Court has applied a similar principle to subpart F inclusions. In *Rodriguez v. Commissioner*, the Tax Court described that "a distribution entails a change in the form of ownership of corporate property, separating what a shareholder owns *qua* shareholder from what he owns as an individual." 137 T.C. 174, 177 (2011) (cleaned up), *aff'd*, 722 F.3d 306 (5th Cir. 2013). And applying that analysis to subpart F inclusions, the Tax Court held that "[a] section 951 [subpart F] inclusion involves no change in ownership of corporate property." *Id*. That is, the subpart F inclusion does not arise "from any distribution of property by a CFC," and "[b]ecause there is no distribution, there is no dividend within the meaning of section 316(a), unless some special rule or qualification applies." *Id*.

In the case at bar, as we have described, section 78 does deem the gross-up to be a "dividend." But that is where section 78 stops. Nowhere does it (or any other Code provision) deem the section 78 gross-up to be a "distribution." In sum, the section 78

---

[3] For this purpose, property includes money. *See* I.R.C. § 317(a) ("For purposes of this part, the term 'property' means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).").

gross-up is a mathematical adjustment that, for taxpayers that elect to claim a foreign tax credit, is an inclusion in income to make up for the "quirk" described in the illustrations contained in our opening brief. (ECF 77, p. 3-5.) The section 78 gross-up is not the "transfer [of] property from the company to its shareholders," *cf. Davis*, 397 U.S. at 313, and it was not a transfer of wealth that "diminish[es] the net worth of the corporation," *cf. Gordon*, 391 U.S. at 89. Put another way, the net worth of Kyocera's CFCs may have decreased between 1986 and 2016 when they paid taxes to foreign governments. But in 2017, when Kyocera computed the amount of its transition tax and elected to claim a foreign tax credit, the net worth of each CFC was unaffected by Kyocera's section 78 gross-up.

Treasury highlighted this point when promulgating the regulation at issue here. A section 78 gross-up "is not paid out of a foreign corporation's undistributed foreign earnings but instead represents earnings that could not be distributed since they were used to pay foreign tax." T.D. 9866, 84 Fed. Reg. 29288, 29320 (June 21, 2019). As we noted in our motion for summary judgment (ECF 77, p. 19), for nearly sixty years – essentially ever since section 78 was enacted – it has been the case that a section 78 dividend is not a distribution. Treas. Reg. § 1.78-1(a) states that the gross-up does *not* "increase the earnings and profits of the domestic corporation." Treas. Reg. § 1.78-1(a) (as in effect in the tax year ending Mar. 31, 2018); T.D. 6805, 30 Fed. Reg. 3208 (Mar. 9, 1965). By contrast, a CFC's distribution of earnings *does* necessarily increase the earnings and profits of the domestic shareholder. *See, e.g.*, Treas. Reg. § 1.316-2(a) ("for the purpose

of income taxation every distribution made by a corporation is made out of earnings and profits to the extent thereof….").[4]

Further, Kyocera's attempt to read section 316 to the contrary fails for multiple additional reasons. First, it falls into a logical fallacy. Reading section 301(c) and section 316 together, it is accurate to say that if a shareholder receives a distribution of the corporation's earnings and profits, then the shareholder's tax item is treated as a dividend. But it is *not* true that if the shareholder's tax item is a dividend, the shareholder necessarily received a distribution of earnings and profits. *See In re Stewart Foods, Inc.*, 64 F.3d 141, 145 & n.3 (4th Cir. 1995) (discussing fallacy of "affirming the consequent, a classic form of invalid reasoning"). Sometimes the shareholder did receive a distribution of earnings and profits; sometimes it did not. This is clear from other Code provisions that create deemed dividends. For example, section 1248 deems certain gain on the sale of stock to be treated as a dividend. But the deemed dividend under section 1248, like the section 78 gross-up, is not a deemed distribution of earnings. *E.g.,* Rev. Rul. 90-31, 1990-

---

[4] The question whether to characterize a tax item as a "distribution" is important more generally, not just for section 245A. The amount of a corporation's earnings and profits determines the extent to which its distributions are taxed as dividends, untaxed as return of capital, or taxed as capital gain. I.R.C. § 301(c). For six decades, whenever domestic corporations have calculated their earnings and profits to determine the taxation of their own distributions, they have been compelled to include the gross-up in their income. At the same time, Treas. Reg. § 1.78-1(a) has prevented them from treating the gross-up as a distribution of earnings to them, which means that it did not increase the domestic corporation's earnings and profits. And because the domestic corporation's earnings and profits were not increased, there was no concomitant increase in the proportion of the domestic corporation's own subsequent distributions that constituted dividends to their own shareholders. We are not aware of any taxpayer – not one – ever calculating its earnings and profits contrary to this rule. Which is to say that domestic corporations accept as a matter of course that the section 78 gross-up is not a distribution of earnings. Nowhere did Congress suggest in TCJA or its legislative history it was changing this longstanding principle.

1 C.B. 147. On the other hand, a deemed dividend under section 367(b) and related regulations *is* a deemed distribution of earnings and profits. Treas. Reg. § 1.367(b)-2(e)(2) ("The deemed [section 367(b)] dividend shall be considered as paid out of the earnings and profits with respect to which the amount of the deemed dividend was determined.").

In other words, it simply does not follow that because there is a deemed dividend, there must also have been a distribution of earnings and profits. There are specific rules that govern each deemed dividend in that regard. And the specific rule that governs the section 78 deemed dividend provides, and has always provided, that the section 78 gross-up is not a distribution. Treas. Reg. § 1.78-1(a).

Furthermore, Kyocera's interpretation of section 301 and section 316 fundamentally fails to fit with the gross-up. If the gross-up is a dividend, and all dividends are distributions, then section 301(b) should apply to determine of the amount of the distribution. That section says: "For purposes of this section, the amount of any distribution shall be the amount of money received, plus the fair market value of the other property received." *See also* Treas. Reg. 1.301-1(b) (stating the same). In other words, under sections 301 and 316, a distribution equals the value of money and other property that the shareholder receives as a transfer from the corporation. For the section 78 gross-up, this amount would always be zero. There is no actual or deemed receipt of money or other property by the shareholder as part of the gross-up. By definition, the gross-up is equal to an amount of money the CFC no longer has because it paid it in foreign taxes.

Accordingly, the section 78 gross-up is a deemed dividend, but it is not a distribution, and it is not eligible for the section 245A deduction.

## II

### *A plain reading of section 245A demonstrates that Kyocera may not claim a deduction for its section 78 gross-up*

The plain language of TCJA demonstrates that the section 78 gross-up is not eligible for the section 245A deduction. And if there is any ambiguity, applying canons of construction and other interpretive principles resolves it in favor of the United States.

The Supreme Court in *Loper Bright* noted that, when determining a statute's "best meaning," a court "deploy[s] its full interpretive toolkit." *Loper Bright Enterprises v. Raimondo*, 603 U.S. __, 144 S. Ct 2244, 2271 (2024). The *Loper Bright* court cited with approval its earlier decision in *American Trucking,* and that opinion described that "[i]n the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Ass'ns*, 310 U.S. 534, 542 (1940). In other words, while a court should deploy its full interpretive toolkit, the Court noted in *American Trucking* that "[t]here is no invariable rule for the discovery of that intention." *Id.* In our opening brief, we showed that the best reading of the relevant statutory regime is that, to be eligible for the section 245A deduction, an item must be both an actual or deemed dividend and an actual or deemed distribution,[5] and since the section 78 gross-up is not a distribution, no such

---

[5] Other requirements must be met to qualify for the section 245A deduction, but we exclude those here for simplicity.

deduction may be taken. (ECF 77, p. 17-24.) We further explained that this interpretation was sensible in the context of the relevant statutory scheme and accords with the principle of horizonal equity (*id.* at 23 n.5). This interpretation is also supported by several canons of construction, including the presumption against ineffectiveness (*id.* at 20), the rule against implied tax exemptions (*id.* at 23), and the construction of tax statutes to avoid double deductions and similar double benefits (*id*. at 26).

Kyocera, in its motion for summary judgment, counters with what it argues to be a canon of construction that works in its favor, *i.e.*, that "in statutes levying taxes . . . [i]f the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." *United States v. Merriam*, 263 U.S. 179, 187-88 (1923), *quoted in part by* ECF 76, p. 15. But the key statute here does not levy a tax.[6] As Kyocera says elsewhere in its brief, "[a]pproximately $6.5 million of KYOCERA AVX's refund claim is based on claiming a tax deduction under Section 245A." (ECF 76, p. 2.) It is undisputed that Kyocera must include in gross income a dividend under section 78 – the affirmative taxing provision. What is at issue in this case is only the availability of the *deduction* under section 245A. And Kyocera ignores the equally venerable rule of

---

[6] In *Merriam*, the question was whether certain specific bequests in Alfred Vanderbilt's will counted as "income," even though the income tax statute excepted bequests from its reach, because Vanderbilt specified that the amounts were "in lieu of compensation or commissions" to certain individuals who were to act as executors or trustees. *See* 263 U.S. at 182-83, 187-88. So that case concerned a "taxing statute." Similarly, the Fourth Circuit has applied Kyocera's canon when the question was whether a community television antenna system was subject to excise tax. *See Lilly v. United States*, 238 F.2d 584, 585, 587 (4th Cir. 1956). Kyocera's other cases likewise involve the reach of a statute imposing tax, not allowing a deduction. *See Officemax, Inc. v. United States*, 428 F.3d 583, 687 (6th Cir. 2005) (excise tax on long-distance telephone service); *City of Tucson v. Comm'r*, 820 F.2d 1283, 1284 (D.C. Cir. 1987) (tax on municipal arbitrage bonds).

construction that "deductions are strictly construed and allowed only 'as there is a clear provision therefor.'" *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934)). Thus, the applicable canon here suggests the deduction allowed by section 245A should be construed narrowly.

To be sure, "[a] principle of interpretation is often countered, of course, by some maxim pointing in a different direction." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014) (internal quotation marks omitted). Regardless of which maxim is better suited, the Court's objective in this case should be to interpret Congress's words as written to determine their appropriate meaning. Kyocera is asking this Court to construe the statutory language *contrary* to the apparent intent of Congress and the policy it has articulated. And, as described above, numerous statutory interpretation tools support the United States' understanding of the statutes; the Court need not use a maxim to break a tie, because the United States' plain reading of the statute is the best one.

Kyocera also suggests (ECF 77, p. 14-15) that its reading is consistent with a presumption against retroactivity. But it misconstrues the Government's argument. To the extent Kyocera is arguing that Treasury cannot apply "New" Section 78 retroactively, we agree; but that is not our argument here, nor is that what Treasury did in the applicable regulation. Neither party is arguing for retroactive application of any statute, including the conforming amendment to section 78 gross-up. Accordingly, Kyocera's reliance on *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), is entirely misplaced.

Rather, the Government is applying section 78, section 245A, and the other relevant statutes as in effect during the year at issue. The parties agree that "Old" Section

78 – that is, section 78 prior to the applicability of the conforming amendment – is the statute in effect for Kyocera's tax year ending March 31, 2018.[7] The parties also agree that new section 245A is in effect for the relevant portion of Kyocera's tax year ending March 31, 2018.[8] It is true that New Section 78 includes the clarification from the TCJA conforming amendment stating that the section 78 gross-up is not a dividend received for the purposes of section 245A. But that does not mean that Congress necessarily bestowed on Kyocera a section 245A deduction for this limited three-month window.[9] During this

---

[7] Section 78, as in effect for the tax year at issue (referred to by Kyocera as Old Section 78), provides:

> If a domestic corporation chooses to have the benefits of subpart A of part III of subchapter N (relating to foreign tax credit) for any taxable year, an amount equal to the taxes deemed to be paid by such corporation under section 902(a) (relating to credit for corporate stockholder in foreign corporation) or under section 960(a)(1) (relating to taxes paid by foreign corporation) for such taxable year shall be treated for purposes of this title (other than section 245) as a dividend received by such domestic corporation from the foreign corporation.

New section 78, in effect for tax years beginning after December 31, 2017, provides:

> If a domestic corporation chooses to have the benefits of subpart A of part III of subchapter N (relating to foreign tax credit) for any taxable year, an amount equal to the taxes deemed to be paid by such corporation under subsections (a), (b), and (d) of section 960 (determined without regard to the phrase "80 percent of" in subsection (d)(1) thereof) for such taxable year shall be treated for purposes of this title (other than sections 245 and 245A) as a dividend received by such domestic corporation from the foreign corporation.

[8] That is, New Section 78 does not take effect until Kyocera's following tax year (*i.e.*, its tax year beginning April 1, 2018 and ending March 31, 2019) because that section's effective date is for "taxable years of foreign corporations beginning after December 31, 2017." TCJA § 14301(d), 131 Stat. 225. But the participation exemption introduced by section 245A applies to "distributions made after … December 31, 2017." TCJA § 14101(f). As we have explained, Kyocera is not entitled to a section 245A distribution for a section 78 gross-up because it is not a distribution of foreign earnings.

[9] Kyocera suggests (ECF 76, p. 11-12) that, by writing the effective dates in the manner that it did, Congress "created a limited window" in which fiscal-year taxpayers, but not calendar-year

short period – after section 245A started applying to Kyocera but before the conforming amendment did – one must read the applicable statutes in effect at that time and determine whether the gross-up qualifies for the section 245A deduction under them. The answer is no because, among other reasons, the 245A deduction applies only to distributions of foreign earnings.

Finally, Kyocera is wrong to suggest (ECF 76, pp. 12, 18) that Treasury agreed that, in the absence of a Treasury Regulation, the statute must be interpreted as allowing a section 245A deduction. Kyocera refers to the preamble to the proposed regulation where Treasury discussed that it "considered two options with respect to the application of section 245A deduction to section 78 dividends." The first option, said Treasury, "was to do nothing" and for the IRS to allow fiscal-year taxpayers "to get a double benefit." 83 Fed. Reg. 63200, 63224 (2018). But such an approach, Treasury noted, would place uncertainty on fiscal-year taxpayers "with respect to their tax positions." *Id*. That uncertainty would exist because "a section 78 dividend may be anticipated to be deemed inappropriate and ultimately be reversed." *Id.* Thus, Treasury anticipated outcomes including that a Court, adopting the meaning of the statutory scheme as argued by the Government in this case, could reverse such a claim made by a fiscal-year taxpayer. To be clear, Treasury did not believe this "first option" to be a good one. It instead chose a second option, which was to publicly announce that (a) Treasury did not believe it

___

taxpayers, could claim a section 245A deduction. Kyocera nowhere explains why Congress might have created such a window or what tax policy such a window might have furthered, because Congress plainly did not intend such a result.

appropriate to interpret the statute in a manner that allowed fiscal-year taxpayers to claim a section 245A deduction for the section 78 gross-up, (b) Treasury also otherwise had delegated authority under the statutes to promulgate a rule confirming disallowance of the deduction, and accordingly (c) that it was planning to issue a formal regulation to that effect. Treasury did not say, as Kyocera suggests, that the best reading of the statute was to allow a section 245A deduction.

Kyocera also relies on a bill introduced in Congress in 2019 to amend the Code in a manner consistent with the proposed regulation and suggests that a negative implication can be drawn from the non-passage of this legislation. (ECF 76, p. 12 and n.8.) But Kyocera's reasoning is wrong and foreclosed by case law. *See Rapanos v. United States*, 547 U.S. 715, 750 (2006). "Congress takes no governmental action except by legislation," so the failure to pass corrective legislation "should more appropriately be called Congress's failure to express any opinion." *Id*. *See also Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 299-300 (2014) (Thomas, J., concurring) ("[A]rguments from legislative inaction are speculative at best."). Indeed, Kyocera is also incorrect because one could just as easily draw the opposite inference: that Congress did not act because it believed the existing statutes and the then-proposed regulation both would validly disallow the deduction.

# III

## *The Court should adopt Treasury's contemporaneous interpretation as set forth in Treas. Reg. § 1.78-1*

Section 245A(g) of the Internal Revenue Code provides that Treasury "shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the provisions of [section 245A]," and section 7805(a) provides that Treasury "shall prescribe all needful rules and regulations for the enforcement of this title." As we described in our motion for summary judgment, Treas. Reg. § 1.78-1 is a valid exercise of that authority. (ECF 77, p. 29-30.) First, Treasury's issuance of Treasury Decision 9866, which included amendments to Treas. Reg. § 1.78-1, satisfied the procedural requirements of the Administrative Procedure Act (APA), and Kyocera's argument to the contrary is without merit. Second, as we explained in our opening brief, the regulation is substantively valid, too. The Supreme Court has recognized that Congress may delegate to an agency, like Treasury, authority to fill in the gaps of a statutory scheme, and that is what Treasury did here.[10] Accordingly, the Court should uphold and apply Treas. Reg.

---

[10] Kyocera states that "Congress intended the dividends received deduction to be broadly available to corporate taxpayers with foreign operating subsidiaries." (ECF 76 at 8). As support, Kyocera cites the Conference Report for the proposition that the term "dividends received" is to be broadly construed, but this language originated in the House Report, as described in detail in the House Report. H.R. No. 115-407, at 371 (2017). The statutory language of section 245A(g) expressly delegates to Treasury the authority to issue regulations "as may be necessary or appropriate to carry out the provisions" of section 245A. While the House Report stated generally that "the term 'dividend received' is intended to be interpreted broadly," it also emphasized that "the Secretary of the Treasury may prescribe such regulations or other guidance as may be necessary or appropriate to carry out the rules of section 245A, including clarifying the intended broad scope of the term 'dividend received.'" *Id*. Thus, the language that Kyocera quotes from the Congressional reports shows that Congress was delegating to Treasury the authority to "give meaning" to a statutory term as may be "appropriate" to carry out the provisions of the statute. *See Loper Bright*, 144 S. Ct. at 2263.

§ 1.78-1, or alternatively, give great weight to Treasury's regulation in interpreting the correct application of sections 78 and 245A.

To begin, Treasury's regulation complied with the Administrative Procedure Act. Section 553(b) of the APA generally requires that an agency give advance notice of proposed rulemaking. Thereafter, the agency must allow interested persons an opportunity to participate in the rulemaking and submit written data, views, or arguments. 5 U.S.C. § 553(c). "After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." *Id*.

As described in detail in our opening brief, Treasury published a notice containing proposed Treasury regulations interpreting the foreign tax credit provisions of TCJA on December 7, 2018. (ECF 77-3, Admin. Rec. p. 94; 83 Fed. Reg. 63200.) Included in those proposed regulations were amendments to Treas. Reg. § 1.78-1, including whether the section 78 gross-up was eligible for the new section 245A dividends-received deduction. Treasury received several comments in response to the proposed regulations. Seven comment letters addressed the foreign tax credit provisions, and those are included in the excerpts of the Administrative Record. (Admin. Rec. at 165, 170, 177, 182, 184, 194, and 198). Treasury scheduled a public hearing for March 14, 2019 (Admin. Rec. at 161); but that hearing was cancelled, because "no one . . . requested to speak." (Admin. Rec. at 164). Treasury thereafter issued its Treasury Decision that contained a concise general statement of the basis and purpose of the amendments to Treas. Reg. § 1.78-1.

Courts review agency action under the procedural requirements of the APA by applying the "arbitrary and capricious" standard. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983); 5 U.S.C. § 706(2)(A). The scope of review "is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43; *C & W Fish Co., Inc. v. Fox*, 931 F.2d 1556, 1565 (D.C. Cir. 1991) ("this court will not second guess an agency decision or question whether the decision made was the best one"). Under this standard, courts "may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency." *State Farm*, 463 U.S. at 42-43; *see also United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). An agency acts arbitrarily if it "entirely fail[s] to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, including aspects raised in significant comments, *see, e.g.*, *W. Coal Traffic League v. Surface Transp. Bd.*, 998 F.3d 945, 954-55 (D.C. Cir. 2021). *Accord Ohio v. EPA*, 603 U.S. ___, 144 S. Ct. 2040, 2053-54 (June 27, 2024).

But the requirement that an agency address significant comments received does not require the agency to accept all comments or individually address each comment. "An agency establishing a rule need not respond to every comment. It must, however, reasonably respond to those comments that raise significant problems." *North Carolina v. FAA*, 957 F.2d 1125, 1135 (4th Cir. 1992). That is because "[t]he failure to respond to comments is significant only insofar as it demonstrates that the agency's decision was not based on a consideration of the relevant factors." *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 550 (D.C. Cir. 2006) (internal quotation marks omitted). So, an agency meets its

obligation under the APA where it weighs the suggestions provided by commenters, decides not to adopt the commenters' suggestions, and explains its reasons for doing so. *See Air Transport Ass'n of America, Inc. v. National Mediation Bd.*, 719 F. Supp. 2d 26, 42 (D.D.C. 2010); *see also Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989) ("As long as a reasonable basis appears for [the] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision.").

Kyocera points out (ECF 76, pp. 17-21) that four comment letters submitted to Treasury (out of seven total on the foreign tax credit provisions) argued that Treasury had no authority to issue the regulation. Kyocera contends that the issuance of Treas. Reg. 1.78-1 was "fundamentally flawed" because Treasury failed to "respond to significant comments regarding the statutory effective date," in violation of the APA. But the administrative record is clear that Treasury met the APA's requirements. Kyocera suggests that Treasury "could have explained what authority delegated by Congress authorized the special applicability date" described in Treas. Reg. § 1.78-1(c). (ECF 76, p. 20.) But that is exactly what Treasury did. As discussed in the United States' Motion for Summary Judgment (ECF 77, p. 13-14), Treasury did review the comments highlighted by Kyocera, but, after consideration, "determined that sections 7805(a), 7805(b)(2), and 245A(g) provide ample authority" for the regulation. T.D. 9866, 84 Fed. Reg. at 29319 (June 21, 2019). Kyocera even quotes the language directly from the Treasury Decision in its brief. (ECF 76, p. 20.) Nowhere in its brief does Kyocera take issue with Treasury's actual response to those comments, nor does Kyocera even describe

sections 245A(g), 7805(a), or 7805(b)(2). *See North Carolina*, 957 F.2d at 1136 (rejecting challenge based on purported failure to respond to comments because agency did respond).

Kyocera suggests that the Government "does not like" that TCJA sections 14101 (new section 245A) and 14301 (new section 78) have different effective dates, and that Treasury is merely substituting its policy for that of Congress. (ECF 76, p. 2.) Not true. As we have emphasized, Treasury's rule accords with the plain meaning of the relevant statutes. And *Congress's* policy behind the section 78 gross-up and new section 245A is readily determined when the relevant statutory regime is analyzed, and it is also described in the congressional reports. To be sure, Treasury's preamble shows that it was cognizant of, among other things, Congress's policy considerations and the untenable double benefit that Kyocera's interpretation, if adopted, would allow. Treasury also made clear, however, that Treasury considered alternatives to the rule that it adopted. That Kyocera may have preferred a different outcome does not diminish the fact that the regulation was the result of "reasoned decisionmaking" and that Treasury acted within the bounds of its authority. *State Farm*, 463 U.S. at 52.

Second, to the extent that Kyocera challenges the retroactive effect of Treas. Reg. § 1.78-1, that argument is without merit. As we noted above, Kyocera's statutory retroactivity argument is confounding (ECF 76, p. 14-15), but beyond that, its citation to *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988), and reference to "administrative rules" also suggests unhappiness that a regulation issued in 2019 applies to its tax year ending in 2018. It is true that, as the Supreme Court has explained, "a

statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* But here, the Code expressly allows the retroactive application of regulations. Section 7805(b)(2) of the Code, which Treasury cited in the rulemaking process, permits Treasury to make a regulation retroactive if "filed or issued within 18 months of the date of the enactment of the statutory provision to which the regulation relates." *See also Baldwin v. United States*, 921 F.3d 836, 844 (9th Cir. 2019) (holding that section 7805(b) is an express authorization to Treasury to issue regulations with retroactive effect that satisfies *Bowen*); *Me. Med. Ctr. v. United States*, 675 F.3d 110, 118 n.14 (1st Cir. 2012) (reaching the same conclusion).

TCJA became law on December 22, 2017. Treasury issued proposed Treas. Reg. § 1.78-1 in December 2018, before Kyocera filed its tax return for the year at issue. 83 Fed. Reg. 63200. Treasury Decision 9866, which contained Treas. Reg. § 1.78-1, was issued on June 21, 2019. Since it was issued within 18 months of TCJA, it is a "promptly issued regulation" for the purposes of section 7805(b), and it may have retroactive effect. Kyocera quotes (ECF 76, p. 20) the Treasury Decision's reference to section 7805(b)(2), but Kyocera fails to even discuss section 7805. Plainly, the promptly issued regulation applies to Kyocera's tax year ending March 31, 2018, pursuant to section 7805(b)(2).

## *CONCLUSION*

For the foregoing reasons, the Court should grant summary judgment in favor of the United States.

Dated: August 23, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Samuel G. Fuller*
SAMUEL G. FULLER
DC Bar No. 1673016
DANIEL B. CAUSEY, IV
SC Bar No. 104035
THOMAS J. SAWYER
IN Bar No. 11665-64

Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, DC 20044
(t) 202-514-8129
(f) 202-514-4963
Daniel.B.Causey@usdoj.gov

*Of Counsel*:

ADAIR FORD BOROUGHS
United States Attorney
District of South Carolina

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I served the foregoing *United States'
Response to Kyocera AVX's Motion for Summary Judgment* on Plaintiff Kyocera AVX's
counsel by electronically filing it with the Clerk of Court using the CM/ECF system.

*/s/ Samuel G. Fuller*
SAMUEL G. FULLER
Trial Attorney
DOJ Tax Division
